In re LYNDEN MERCANTILE CO.

(District Court, W. D. Washington, N. D.   September 30, 1907.)

No. 3,387.

BANKRUPTCY—VALIDITY OF MORTGAGE—BONA FIDES OF LOAN.

A mercantile company when wholly insolvent, and a short time before it was adjudged bankrupt, gave a chattel mortgage on its stock to secure a loan. Before making the loan, the lender consulted a member of a banking firm which was the bankrupt's largest creditor and knew its condition, and such banker was constituted the lender's agent in making the loan. The proceeds of the loan were deposited in his bank, which procured the application of the greater part of the same upon its debt, some of which was not yet due. *Held*, that the mortgage was invalid as against the bankrupt's creditors; the purpose of the loan having clearly been to enable the bank to obtain a preference over other creditors, which fact the lender must be conclusively presumed from the circumstances to have known.

In Bankruptcy. On review of referee's decision on claim of W. M. Frizzell as a preferred creditor.

Gray & Stern and Fairchild & Bruce, for trustee.
Rose & Craven, for mortgagee.

HANFORD, District Judge. It is the opinion of the court that the claim of W. M. Frizzell as a preferred creditor, based upon a promissory note for $4,000, secured by a chattel mortgage on the stock of merchandise constituting practically all the assets of the bankrupt, cannot be sustained as a valid claim.

The bankrupt had been doing business as a mercantile corporation at the town of Lynden, in Whatcom county, and at the time of giving the mortgage it was insolvent and on the verge of collapse. Its largest creditor was a local bank, conducted by a partnership composed of George S. Aldrich and Arthur L. Swim. An application for a loan of $4,000 was made to Mr. Frizzell, by a letter written by an attorney, to which he responded by a letter, stating the terms and conditions on which he would make the loan. This reply appears to have been written after a meeting between Mr. Frizzell and Mr. Swim, at which the application was mentioned and inquiry made as to the financial status of the mercantile company, and it is significant that this letter directed the attorney to make arrangements with the bank and to consult Mr. Swim as to the provisions to be included in the mortgage, and stated that the money would be placed in the bank to be paid when the securities were made satisfactory to him. There is in the negotiations and in the culmination of the transaction a manifest intention to not give any opportunity for other creditors to secure a preference ahead of the bank. The deal was consummated through the bank, as the letter indicated that it should be. Mr. Frizzell gave Mr. Swim a check for $4,000, and instructions as to requirements to be observed in preparing the securities, and authorized him to deliver the check on delivery of the papers conforming to his instructions. Upon execution of the mortgage and promissory note, a check was delivered and indorsed

by the manager of the mercantile corporation, and it was then deposited to the credit of the company in the bank, and from the fund created by that deposit the bank profited by obtaining payment of two promissory notes aggregating $1,300, not then due, and payment of an overdraft amounting to more than $2,000.

This case differs materially from the Macintosh Case (unreported), cited in the argument in behalf of the complainant, in which the court sustained the validity of a chattel mortgage. As stated in the memorandum filed, the court found no evidence to charge Mr. Loggie, the mortgagee, with knowledge of a purpose to create a lien in order to secure funds to prefer a favored creditor. In this case Mr. Frizzell made inquiries as to the financial condition of the borrower of Mr. Swim, a member of the banking firm which was the largest creditor of the insolvent corporation, and Mr. Galbraith, who was its bookkeeper, both being in a position to know that it was in a ruined condition, and both of whom are closely related to him. It is incredible that Mr. Swim, as an agent, would have consummated the loan without apprising his principal of the financial straits of the borrower, and of the benefits to accrue to his firm by having the money loaned placed within control of himself or his bank.

I sustain the findings of the referee, to the effect that the primary object of the transaction was to enable the bank to obtain an unlawful preference over creditors of an insolvent debtor, and that Mr. Frizzell is chargeable with knowledge of all the facts and the purpose of the attempt to create a lien. He is a business man of large experience and mature judgment, and he necessarily knew that he was not making a loan in the regular course of business to enable a going concern to keep going. By giving a chattel mortgage covering its stock of merchandise to secure a demand note, the corporation destroyed its credit, and necessarily terminated its life as an independent business concern. That is a fact of which he cannot pretend to be ignorant. Furthermore, he is chargeable with knowledge of the facts known to Mr. Swim, whom he constituted his agent to make the loan, and a conclusive presumption arises that he acted in the transaction merely for the accommodation of the bank, which received his check and indorsed it before it was cashed.

There are other grounds for questioning the validity of the mortgage. I hold, however, that it should be rejected because the transaction was not bona fide. Let an order be entered confirming the decision of the referee.