### WALTERS v. ZIMMERMAN et al.

(District Court, N. D. Ohio, E. D. June 21, 1913. On Rehearing, July 10, 1913.)

### No. 44.

1. BANKRUPTCY (§ 166*)—PREFERENCES—DUTY TO MAKE INQUIRY.

Where a creditor of an insolvent takes security within four months prior to bankruptcy, he is bound to make inquiry as to whether a preference is intended and is chargeable with knowledge of all that such inquiry, if made, would have disclosed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.*]

2. BANKRUPTCY (§ 166*)—PREFERENCES—CONSTRUCTIVE NOTICE.

A partnership of which the bankrupt was a member was indebted to a bank in the sum of $19,117.99, for which the bank held notes secured by government bonds and personal property of the bankrupt amounting to $6,000. The bank refused to extend the credit, demanded payment, and the cashier advised the bankrupt to apply to the bank's president individually for a loan. This he did, receiving a loan of $12,000 on real estate security; the lien being inferior as to one parcel to a lien for a $5,000 loan effected in another place. The proceeds of the mortgage were immediately placed to the credit of the partnership and checked out to liquidate the partnership's debt to the bank, which also took the bonds at a fixed price in further liquidation of the indebtedness, leaving only a balance of $2 in the bank to the credit of the firm. It also appeared that the bankrupt had practically no remaining equity in the mortgaged property. *Held*, that the president of the bank was chargeable with notice that a preference was intended and was not entitled to prove his claim as secured in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.*]

In Bankruptcy. Action by S. E. Walters, as trustee in bankruptcy of L. F. Zimmerman, individually and as partner in the Zimmerman Music Company, against Mary E. Zimmerman and others to set aside an alleged preference consisting of a mortgage given by the bankrupt to one George H. Marsh. Decree for complainant.

White, Johnson & Cannon, of Cleveland, Ohio, for plaintiff.
Marshall & Fraser, of Toledo, Ohio, for defendant Marsh.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

KILLITS, District Judge. This is an action by the trustee in bankruptcy to set aside as a preference, under section 60, par. "b," of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), as amended by Act June 25, 1910, c. 412, § 11, 36 Stat. 842 (U. S. Comp. St. Supp. 1911, p. 1506), a certain mortgage, among others given by the bankrupt, to George H. Marsh.

It appears that at the time of the giving of the mortgage, which was within four months of the filing of the involuntary petition in bankruptcy, the mortgagor, L. F. Zimmerman, was, individually and as a partner in the Zimmerman Music Company, insolvent. The partnership was indebted to the First National Bank of Van Wert in the sum of $19,117.99, for which the bank held the notes of the partnership and government bonds, personal property of Mr. Zimmerman, in the amount of over $6,000. The partnership had always been borrowers from the bank, and its indebtedness had been steadily increasing until further credit had been refused by the cashier.

On the date of the mortgage, Mr. Marsh loaned to Zimmerman $12,000 upon real estate security; the lien being inferior, as to one parcel, to a $5,000 loan effected in another place. The proceeds of the mortgage were immediately placed to the credit of the Zimmerman Music Company in the bank and checked out, to the complete liquidation of the partnership's debt to the bank; the latter having, by arrangement with Mr. Zimmerman, taken the government bonds at a fixed price regarding premium to be applied to the reduction of the indebtedness. The result of this transaction was to leave a balance of $2 in the bank to the credit of the partnership, which was at that time very largely indebted to other persons and firms.

The evidence shows that the value of the property conveyed by the mortgage was not very greatly in excess of the face of the two mortgages thereon, namely, $17,000; some of the witnesses asserting that no equity remained, others that in their judgment an equity of $3,000 to $5,000 remained. Subsequent dealings with two parcels of the property within a few months by way of sales tended to show that the equity above the mortgages was very slight, if any existed.

Mr. Marsh at the time of this transaction was president of the bank. He knew that the money which he was furnishing was to be used to apply on the bank's claim. He was an old acquaintance and friend of Zimmerman. The circumstances indicate, in the court's judgment, very clearly that but casual inquiry on his part (such conversations and investigations as ordinary alert business men, especially in the banking business in small cities of the character and size of Van Wert, usually make) would have quickly developed knowledge to him that Zimmerman was insolvent and likewise the partnership.

[1] The duty of making inquiry and the responsibility to be charged with all the knowledge which inquiry, if made, would have brought are propositions too well settled in cases of this character to need citation of authority; the only question open for consideration being whether, Mr. Marsh, at the time of the making of the mortgage, not being a creditor, his mortgage could be avoided on the ground of his

knowledge that its proceeds were to be used to wipe out the antecedent debt held by his bank.

[2] In the judgment of the court, the case is settled by applying the principles discussed in Newport Bank v. Herkimer Bank, 225 U. S. 178, 32 Sup. Ct. 633, 56 L. Ed. 1042. The action in the case before us is founded upon the following provision of section 60, par. "b," of the Bankruptcy Act:

"If a bankrupt shall have * * * made a transfer of any of his property, and if, at the time of the transfer, * * * and being within four months before the filing of the petition in bankruptcy * * * the bankrupt be insolvent, and the * * * transfer then operate as a preference, and the person receiving it or to be benefited thereby or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such * * * transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

For the purpose of this case, emphasis should be laid upon the fact that the language quoted above allows that the person taking the transfer, but who does not hold the preferred debt, may be affected by constructive knowledge that a preference will result. In the case cited the court holds that to constitute a preference under the Bankruptcy Act, having reference to that portion of the act which we quote, it is not necessary that the transfer be made directly to the creditor; it may be made to another for his benefit; and, if preferential, circuity of arrangement will not avail to save it. This is but a slight paraphrasing of the language of Justice Hughes' opinion in the case, at 225 U. S. 184, 32 Sup. Ct. 635 (56 L. Ed. 1042). Continuing, he says:

"It is not the mere formal method of the transaction that the act condemns but the appropriation by the insolvent debtor of a portion of his property to the payment of a creditor's claim so that thereby the estate is depleted and the creditor obtains an advantage over other creditors."

We are cited to a very recent decision of the Supreme Court (Van Iderstine v. National Discount Co., 227 U. S. 575, 33 Sup. Ct. 343, 57 L. Ed. 652), as sustaining the defense to the trustee's action. Attention, however, is called to the language of the opinion on page 583 of 227 U. S., page 345 of 33 Sup. Ct. (57 L. Ed. 652):

"Cases, under the present statute, like In re Beerman [D. C.] 112 Fed. 663, relied on by the trustee, relate to transactions in which the mortgagee was practically the representative of the preferred creditor and where consequently the conveyance was as much subject to attack as though it had been made directly to him. But here the discount company was not a creditor of Fellerman & Son and had no relation with the person to whom the money was paid. National Bank of Newport v. National Bank of Herkimer, 225 U. S. 178 [32 Sup. Ct. 633, 56 L. Ed. 1042]. The transfer, therefore, was not a preference to the discount company and could not be set aside without proof that it knew that Fellerman not only intended to pay some of his creditors but to defraud others."

It seems from this language that in this latest case the Supreme Court distinguishes the facts of that case from the facts in the case in 225 U. S., and in so doing reaffirms the proposition of Justice Hughes in the latter case.

The cases of Lumpkin v. Foley, 29 Am. Bankr. Rep. 673, 204 Fed. 372, and Johnson v. Dismukes, 29 Am. Bankr. Rep. 686, 204 Fed. 382,

from the Circuit Court of Appeals, Fifth Circuit, while upon another section of the act, yet furnish considerable support to the position which we take.

It is well suggested that, to permit these mortgages to stand, made as they are to a person who has at least constructive knowledge of the insolvency of the mortgagor and who is the executive officer and head of the creditor who obtains a preference, would be to furnish an easy opportunity to avoid the provisions of section 60 of the act.

Speaking of a situation very similar to this, Judge Newman, in Re Beerman (D. C.) 112 Fed. 663, at page 666, says:

"If transactions of this sort are to be permitted, then, instead of a creditor taking a mortgage himself, when a debtor is in failing circumstances, he will get some one else to advance the money, agreeing that the person advancing the money shall suffer no loss and thereby obtain by indirection a preference which he would be unable to get if he had acted directly with the debtor, provided, of course, that the debtor within four months thereafter becomes a bankrupt."

The fact that Mr. Marsh, as far as the record shows, took no indemnity from the creditor, thereby making the instant case more closely analogous to the Beerman Case, in our judgment, is amply offset by the other fact that Mr. Marsh was the nominal executive officer of the bank and that all the circumstances attending the transaction indicate that his interest as such was the motive actuating his taking the mortgage. There is no reason to suspect from the evidence before us that as a prudent business man he could have regarded the loan as a very safe one; the debtor being an aged man in failing circumstances, of which the bank's own records furnish full evidence, and the security being insufficient to warrant the feeling that the margin in the equity would protect accumulating interest and costs of foreclosure.

The decree in this case should be for the plaintiff.

## On Rehearing.

At the urgent instance of counsel for defendant Marsh, this case has been reargued on the old record. No new facts are presented for consideration, and we notice none not referred to in our first memorandum save that Zimmerman was sent to Marsh, the bank's president, to borrow the money to pay for the unsecured portion of the bank's claim by Webster, the bank's cashier, who was demanding an adjustment and refusing the music company further credit.

We have, then, these facts shown either directly or established as the inevitable deductions from the facts: An insolvent pressed for a settlement by a bank knowing its debtor's plight; the president of the bank making a loan, of his own money, on security not gilt-edged, to say the least (the amount of the equity above the mortgage being a doubtful quantity), to the insolvent, known by the president to be such, with the knowledge and (the court feels justified in concluding) upon the understanding that the proceeds are to be applied on the bank's claim. The transaction concluded effects a preference to the bank in that the latter gets its unsecured claim fully paid while the other credi-

tors must receive but a meager dividend. We feel that no other deduction is possible from the facts than that Marsh intentionally helped Zimmerman to means whereby he, for the music company, might prefer Marsh's bank. Indeed, in a brief filed by Marsh's counsel on rehearing, this is conceded, but it is urged that, in the transactions up to and after the execution of the papers and the placing of Marsh's consideration money into Zimmerman's hands, no fraud had occurred, and therefore the transaction became unimpeachable unless it is proper to say from the evidence that Marsh was acting as the agent of the bank all through the business. We are unable to follow the argument thus made. In the light of both reason and the current of authority, a showing of agency is not indispensable to the avoidance of this transfer. The only case shown by counsel for Marsh sustaining the mortgage is In re Hersey (D. C.) 171 Fed. 1004, at page 1007, and that authority is not only out of harmony with cases hereafter referred to but it seems to be based in part upon an imperfect reading of section 67d of the act, which provides:

"Liens given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall * * * not be affected by this act."

That Marsh's mortgage lien was accepted in contemplation that an unlawful preference was to be effected is the inevitable conclusion from the facts. It does not answer very fully, therefore, the saving description of a lien found in section 67d, as it is not one "accepted in good faith and not in contemplation of * * * this act." Marsh must be charged with a "contemplation" of the provisions of the bankruptcy act when he made his loan that one known to him to be an insolvent might have the means to pay his bank and thereby prefer it unlawfully. We appreciate that the case before us, in all particulars essential to the point under discussion, is paralleled by In re Hersey, but we are forced to construe the facts in that case as creating a condition the opposite of that provided for by section 67d and not, as the court there held, one saved by that section.

In our former memorandum we found the circumstances to warrant an avoidance of the Marsh mortgage under section 60b. It is true that this section and 67e provide for distinguishable circumstances (Coder v. Artz, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008), but it is also true that the two categories thus provided so shade into each other that it may be that each section has application at times and that the two must be jointly considered to effect the purpose of the law.

In the Matter of Pease (D. C.) 129 Fed. 446, Judge Swan, in a decision affirmed by the Circuit Court of Appeals for this Circuit, elaborately analyzed the authorities to the date of his opinion, in applying section 67 and its subdivisions to circumstances, in the essentials for determination, very similar to the facts before us. Pease owed $10,-000. He mortgaged a stock worth about the total of his debts to a security company for $3,500. The loan was negotiated by an attorney who represented the mortgagee and also a creditor who obtained a

preference.   In the Matter of McLam (D. C.) 97 Fed. 922, at page 923,
Judge Wheeler held that a mortgage which effected a preference neces-
sarily operated to hinder and defraud other creditors, reversing the
finding of arbitrators that the mortgagor in that case had no such in-
tent.   In that case the court said:

"The provisions of section 67 of this act are contrasted with those of the
former act  *  *  *  as more favorable in this respect.  That act avoided a
conveyance made within four months 'with a view to give a preference' to a
person 'having reasonable cause to believe' the bankrupt to be insolvent; and
that the conveyance was being made in fraud of the act.  The latter act
avoids such conveyances by the bankrupt 'with the intent and purpose on his
part to hinder, delay, or defraud his creditors, or any of them.'  A convey-
ance to one creditor of what would otherwise, under the provisions of the
act, go to all would hinder and defraud the others and amounts to a pref-
erence, contrary to the purpose of the act, as much as if the word 'pref-
erence' had been used in this act as it was in the former.  This provision
of the latter act is more prohibitive than that of the former, for no reasona-
ble cause of belief of insolvency and fraud on the act, by the person re-
ceiving the preference, is necessary to avoid it.  The purpose and intent of
the bankrupt only is looked at and, if contrary to the act, is sufficient.  The
question seems to have been considered as if it arose at common law, or un-
der statutes of fraudulent conveyances, where securing any creditor is al-
lowable, and not as arising under a bankrupt law, where any intended pref-
erence among creditors is forbidden and avoided.  Such a mortgage of the
last available property within eight days of filing a voluntary petition and
schedules could have no other effect than to give a preference to that cred-
itor over others existing, to many times the amount of the debt intended to
be secured, and of the property to secure it.  The intent in giving the mort-
gage is to be taken to have been that it should have its obvious effect."

Judge Swan, in the Pease Case (D. C.) 129 Fed. 448, adopts this
position and, speaking of the several subdivisions of section 67, says:

"It seems clear that these several subdivisions have a common purpose
and should be read together as collectively definitive of the essentials of a
valid lien.  It follows that no person can be a 'purchaser in good faith' of
any part of the bankrupt's estate, if title or security was accepted 'in con-
templation of or in fraud upon' the bankrupt act, or if for any reason it
would not have been valid against the claims of creditors of the bankrupt.
The propositions that advances may be lawfully made in good faith to a
debtor to carry on his business, and that the lender may lawfully take se-
curity at the time for such advances without violating the bankrupt act, are
beyond denial.  'It makes no difference,' says the court in Tiffany v. Boat-
man's Inst., 18 Wall. 375 [21 L. Ed. 868], 'that the lender had good reason
to believe the borrower to be insolvent, if the loan was made in good faith,
without any intention to defraud the provisions of the bankrupt act.'  This
was held in construction of section 35 of the bankrupt act of 1867, which
avoided 'any conveyance, transfer or other disposition of the property of an
insolvent, if the grantee had reasonable cause to believe the grantor in-
solvent, and that the conveyance was made to prevent the property coming
to the assignee in bankruptcy, or to prevent the same from being distributed
under the act, or to defraud the object of, or in any way impair, hinder, im-
pede, or delay the operation and effect of, or to evade, any of the provisions
of this title.'  These two elements must have concurred in the transaction
to avoid the conveyance.  It was not enough that the grantor was believed
to be insolvent in order to defeat the title of the grantee, but it must also ap-
pear that the grantee knew that the conveyance was made with a view to
effect any purpose prohibited by the act.  If that is shown, it avoids the
transfer.  Even though a present fair consideration for property transferred
to the hindrance, delay of, or in fraud upon creditors, it will not save the
conveyance.  'A sale may be void for bad faith, though the buyer pays the

full value of the property bought.' This is the consequence where his purpose is to aid the seller in perpetrating a fraud upon his creditors and where he buys recklessly, with guilty knowledge"—citing cases.

It is unnecessary to review the authorities considered by the court in the Pease Case save as we shall later quote from In re Soudan Manufacturing Co., 113 Fed. 804, 51 C. C. A. 476. These cases all bear more or less on the facts before us in this case. While in the Pease Case the agency of the attorney negotiating the loan, acting for both mortgagee and preferred creditor, is patent, such agency is not fundamental to the court's conclusion, except so far as through it proof is found to charge the mortgagee with knowledge of the mortgagor's insolvency and the purpose to use the proceeds for an unlawful preference. It is admitted that such destructive information was Marsh's, whether or not he was an agent of the bank. In the Soudan Case, considered by Judge Seaman, the mortgage was upheld; the second paragraph of the syllabus succinctly stating the situation:

"A mortgage on the plant of a manufacturing corporation to secure a loan of money made in good faith by the mortgagee, who was wholly unacquainted with the company and acted through an agent, upon representations made by the president of the company and the report of an agent sent to examine the security, is not rendered void by the bankruptcy act, where the company was at the time a going concern and actively conducting its business and *not known by the lender or his agent to be insolvent*, although it was in .fact insolvent and became a bankrupt within four months, and although the mortgagee knew that a large part of the money borrowed was to be used in paying outstanding unsecured debts."

In the body of the opinion in that case the court says:

"The mortgagor corporation was insolvent in fact, if not so considered by its president, and obtained the loan for the purpose of paying up certain indebtedness and with the effect of giving a preference to the creditors mentioned, within the definition of section 60a of the bankruptcy act; and while the appellant was not 'the person receiving' such preference 'or to be benefited thereby,' within section 60b, *it is clear that the transaction violated section 67e of the act, if the loan was made upon the mortgage with notice that the corporation was then insolvent, and that it was intended thereby to accomplish unlawful preferences, or under circumstances which charge the appellant with notice that violation of the act was the purpose of the loan.* It is equally clear that section 67d saves from invalidity the security thus founded upon a present consideration, if 'accepted in good faith and not in contemplation of or in fraud upon this act'; and, in the absence of notice which impeaches the good faith of the transaction as so defined, the mortgagee is entitled to the benefits of his lien, notwithstanding the fraud, if any there was, on the part of the mortgagor. *In this view the inquiry is narrowed to the proof of facts and circumstances brought home to the appellant or to the attorney who conducted the transaction for him, touching both the insolvency of the borrower and the unlawful purpose of the loan.* The findings below are, in effect, that the corporation was insolvent when the loan was made, and the appellant had notice of such condition, of the use to be made of the loan, and had 'reasonable cause to believe that it was intended thereby to give' preferences."

It is only because the court there is unable to find that Stites, the mortgagee, who knew that the money he advanced was to pay pressing debts, and who was a stranger to all the principals, and who paid a present consideration for the transfer, neither did know nor have reasonable cause to believe that his money was to be used by an insolvent

to effect an unlawful preference that the lien was upheld. Marsh's position as the executive head of the preferred bank makes his case less appealable to a chancellor than that of Stites, the Soudan Company's mortgagee, while possession of the fatal knowledge (which Stites did not have) is conceded to Marsh by his own counsel. The question of what the Circuit Court of Appeals of the Seventh Circuit would have done to Stites had the court found him with the information which Marsh had is easily answered. Later cases on the same subject, each of which add to authority condemning the Marsh mortgage, are In re Lynden Mercantile Co. (D. C.) 156 Fed. 713; Hackney v. Hargreaves Bros., 68 Neb. 624, 94 N. W. 822, 99 N. W. 675, 13 Am. Bankr. Rep. 164; Bank of Wayne v. Gold, 146 App. Div. 296, 130 N. Y. Supp. 942, 26 Am. Bankr. Rep. 722 — in addition to those cited by us in the first memorandum. These cases and others cited in the notes sustain Collier's text, under sections 60a and 60b, as follows (Collier on Bankruptcy [9th Ed.] p. 813):

"A transfer may be made to a third person and still be a preference, for a creditor may be benefited thereby. Hence the phrasing, 'the person receiving it or to be benefited thereby,' words found in the same connection in the law of 1867. To constitute a preferential transfer, it is immaterial to whom the transfer is made, if it be made for the purpose of paying the claims of one creditor in preference to those of others. If a transfer be made to a third person merely as an agent or cover for the creditor, who is in effect benefited thereby, it is a preference. It seems to follow, from the last words in the subsection, that the suit can be brought not only against the creditor or his agent but also against a transferee not a creditor."

See, also, Loveland on Bankruptcy (4th Ed.) pp. 951, 989, et seq., where substantially the same conclusions are reached.

It seems evident that a transaction obnoxious to the provisions of section 67, and which also is reprehended by section 60b, may be attacked under the latter section. There the act gives the trustee an option either to pursue the property or the proceeds. Either course is open to him; no one can control his discretion, least of all in behalf of one who has engaged in an act in "contemplation of" the bankruptcy act, to effect a purpose condemned by the latter. Assuming that such is Marsh's position, a court of equity (and that is the character of this court sitting in bankruptcy) is not called upon to concern itself in his extrication from difficulties which result from the transaction; hence, the trustee having elected to hold the property, there was no occasion to make the bank a party to the case that Marsh may recover from the bank or for any other purpose.

Of course we quoted in our former memorandum merely dicta from the cases in 225 and 227 U. S. Reports, but these dicta are not only in harmony with the law as stated by Collier and Loveland but they illuminate the mind of the Supreme Court and suggest that it views transactions of this character in the same way as the courts whose decisions we have cited. Our conclusion, therefore, is that the trustee may avoid this conveyance.

We do not join in the fears of counsel for Marsh that, if the law is as claimed by the trustee, "it would prevent any person from obtaining assistance unless he can first show that he is solvent and does not

need help," for the decision in the Soudan Case settles that fear; nor that "it will compel persons dealing in good faith and for full consideration to ascertain at their peril the financial condition of the people they are dealing with," for, if their transactions are in absolute good faith, that fact alone saves such persons; nor that "it will give trustees the right to attack innocent persons when a direct and simple remedy is at hand," for this decision is directed at a person who cannot be held to be "innocent" when the provisions of the bankruptcy act are applied to his acts; nor is there a valid objection to this position in the fact that "it will subject to attack every transaction of a bankrupt made within four months, not only preferential payments but mortgages and sales," for that is undoubtedly the law and it does not need the construction which we place upon the sections under consideration to make that the law, as every transaction of the bankrupt occurring within four months previous to the filing of a petition against him is subject to scrutiny and such a condition is fundamental to the law itself; nor is it a valid objection to the trustee's claim against Marsh "that the remedies at law must be exhausted (there must be a want or inadequacy of the remedy at law before equity will assume its jurisdiction)," for the reason that the trustee is pursuing a plain remedy at law given to him by the last phrase of section 60b, wherein he is accorded, as we have seen, the option to pursue either the property or its proceeds.