MARSH v. WALTERS et al.

(Circuit Court of Appeals, Sixth Circuit. March 2, 1915.)

No. 2553.

1. BANKRUPTCY ⬤➡165—"PREFERENCE"—TRANSFERS CONSTITUTING PREFERENCE.

Where, within four months before bankruptcy, the president of a bank, to whom the bankrupt was indebted, with sufficient information to put him on inquiry as to the bankrupt's insolvency, loaned his own money to the bankrupt solely to enable the bankrupt to pay the bank, though the payment to the bank might have been recovered as a preference, a mortgage taken by the president to secure his loan was also a "preference," under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (Comp.

---

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

St. 1913, § 9644), making transfers, while a bankrupt is insolvent and which operate as a preference, voidable, if the person receiving the transfer or benefited thereby shall have reasonable cause to believe that its enforcement will effect a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266; Dec. Dig. ☞165.

For other definitions, see Words and Phrases, First and Second Series, Preference.]

2. BANKRUPTCY ☞302—PREFERENCE—SUITS TO SET ASIDE—VARIANCE.

Where, in a suit by a trustee in bankruptcy against the president of a bank, to which the bank was not a party, to set aside as a preference a chattel mortgage given the president, the bill proceeded on the theory that the mortgage was given to secure an antecedent debt to the bank, and attributed knowledge that a preference would result to the president only, and not to the bank, while it appeared from the evidence that the mortgage was given to secure a loan of the president's own money, made to enable the bankrupt to pay the bank, a decree setting aside the mortgage could not be sustained; it being theoretically possible that the president, by reason of the form of the bill, had failed to assert defenses otherwise open to him.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 456, 457; Dec. Dig. ☞302.]

3. DOWER ☞49—BAR—EFFECT OF JOINDER IN PREFERENTIAL CONVEYANCE.

The dower interest of a bankrupt's wife was no part of the bankrupt's estate, and her joining in a preferential conveyance, afterwards declared invalid, would not deprive her of her right of dower.

[Ed. Note.—For other cases, see Dower, Cent. Dig. §§ 154–174; Dec. Dig. ☞49.]

Appeal from the District Court of the United States for the Northern District of Ohio; John M. Killits, Judge.

Suit by S. E. Walters, trustee in bankruptcy of L. F. Zimmerman and another, individually and as partners, doing business as the Zimmerman Music Company, against George H. Marsh. From a decree for complainants, defendant appeals. Reversed and remanded, with directions.

H. W. Fraser, of Toledo, Ohio, for appellant.

Lawrence C. Spieth and A. V. Cannon, both of Cleveland, Ohio, for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. This is an appeal from a decree setting aside an alleged preferential transfer under section 60b of the Bankruptcy Act. The transfer in question is a real estate mortgage for $12,000, given to appellant within four months of bankruptcy by L. F. Zimmerman, one of the bankrupts (his wife joining in the mortgage), upon certain of the mortgagor's real estate. The partnership at the time owed the First National Bank of Van Wert, Ohio, upwards of $19,000; the bank holding in pledge as security certain bonds worth about $6,000. The partnership had at the time a checking account at the bank, on which there was a balance to the firm's credit. The bill alleges an indebtedness from the bankrupts to the bank, the making of the mortgage "for the benefit of" the bank, al-

leges lack of consideration from appellant for the mortgage, and, in effect, that appellant knew or should have known that the effect of the mortgage was to enable the bank to obtain a greater percentage of its debt than other creditors. The record shows, however, that in fact appellant, who was the president of the bank (though not its active manager), turned over to the mortgagor $12,000 of his own money; the latter being immediately, and as part of one transaction, applied upon the bank's debt. We assume, for the purposes of present disposition, that not only the partnership, but the individual members as well, were actually insolvent when the mortgage was given, although the record is not definite on this point. But the evidence justifies the conclusion that both the bank and appellant had sufficient information to put them on inquiry as to the debtors' insolvency.

While, so far as form goes, the evidence, as already said, negatives the theory of the bill that the mortgage was given merely as security for a pre-existing debt, and (by implication) that appellant was merely the bank's agent in taking and holding the mortgage, yet it appears, according to the record here, that the mortgage was taken at the instance of and for the benefit of the bank, and was so taken, not because the loan was an attractive one in itself, but solely to enable the bank to obtain payment; for we have no difficulty in concluding, on the record before us, that the mortgage was the result of a three-cornered arrangement between the cashier, appellant, and Zimmerman, one of the debtors, by which the proceeds of the mortgage loan should be, as part of one and the same transaction, directly and immediately applied in payment of the bank debt. This conviction results from the testimony of the three parties most directly concerned, in connection with the fact that the amount of the mortgage loan, plus what was available on the sale of the pledged bonds, added to the amount of the bankrupt's deposit, was but $2 more than the bank debt, the entire of which was immediately paid according to previous understanding.

[1] The important question, then, is whether the mere fact that appellant furnished his own money, as a means of enabling the bank of which he was the president to obtain a preference, relieves his mortgage from attack as a preferential security under section 60b. Assuming insolvency, the transaction amounted, upon the present record, to a preference in favor of the bank; but the bank was not made a party, and for this reason the question of appellant's liability, under the pleadings, becomes specially material. Had the bill been so drawn as to cover the situation shown, we see no insuperable objection to a setting aside of the mortgage itself as a preferential transfer, so far, at least, as necessary to complete relief against such transfer; for circuity of arrangement cannot avoid the effect of a transfer intended to be in fact preferential. Newport Bank v. Herkimer Bank, 225 U. S. 178, 184, 32 Sup. Ct. 633, 56 L. Ed. 1042; Stearns Salt & Lum. Co. v. Hammond (C. C. A. 6) 217 Fed. 559, 562, 133 C. C. A. 411. And while there can be no preferential transfer without a depletion of the bankrupt estate (Continental Trust Co. v. Chicago Title Co., 229 U. S. 435, 443, 33 Sup. Ct. 829, 57 L. Ed. 1268), yet the transaction in

question, in view of the bankrupts' insolvency, was bound to have the effect of depleting the estate otherwise available for ratable distribution among creditors.

In these circumstances, we cannot think that the mere fact that the bank's president used his own money as a means of effecting a preferential transfer relieved his security from the ban of section 60b, so far as it may stand in the way of full relief to creditors. The case is within the reasoning of the Beerman Case (D. C.) 112 Fed. 662, and of Dean v. Davis, 212 Fed. 88, 128 C. C. A. 658. True, there was here no indemnity bond, as in the Beerman Case; but the element of personal interest, which in the latter case was represented by the indemnity bond, is here represented by appellant's personal and official interest in the bank and in the preferential payment of its debt. The case is therefore, we think, readily distinguished from the Van Iderstine Case, 227 U. S. 575, 33 Sup. Ct. 343, 57 L. Ed. 652, where (a) the Discount Company had no knowledge that a preferential payment was intended, and (b) had no notice whatever of the intended application of the money loaned, while here appellant not only knew of the intended preference, but was directly interested in the payment, not only in his official capacity, but individually as a stockholder. The case here also differs from the Baar Case, 213 Fed. 628, 130 C. C. A. 292, for there the uncle who made the loan was interested in but $500 out of $2,500 advanced, and so could not be said to have received a preference as to more than the $500.

Moreover, the case seems to have turned upon the question of fraudulent conveyance, and there was in fact there no fraud. While, therefore, it would have been proper to sue the bank to recover its preference, the mortgage is not necessarily relieved from attack.

[2] The bill, however (which was perhaps filed under a misapprehension of the facts), is not in form to permit recovery upon the record made. Its theory is that the mortgage merely secured the antecedent debt, and the allegation of knowledge that a preference would result is attributed to appellant only, and not to the bank. We do not feel justified in sustaining the decree in the face of an allegation in the bill that no advance was made, merely because the advance actually made by appellant was designed to effect a preference to the bank. As between appellant and the bank, there is no inequity in putting the burden upon the bank, which, indeed, as between itself and appellant is primarily liable; and while, if the bill had been in proper form to meet the actual transaction, appellant could not now be heard to complain that the bank was not made a party (for he made no such defense by answer), yet under a bill stating the actual case he would be entitled to have the bank before the court, and it is at least theoretically possible that appellant has failed, by reason of the form of the bill, to assert defenses otherwise open to him.

What we have said concerning the effect of the transfer in question is, of course, based upon the record before us. We do not attempt to pass upon the bank's rights in its absence, nor finally to decide the rights of appellant as they may appear under issue joined on prop-

er pleadings and such new or further testimony as may be presented thereunder.

[**3**] We may add that Mrs. Zimmerman's dower interest was not a part of the bankrupt's estate, and her joining in a preferential conveyance, afterwards declared invalid, would not deprive her of the right of dower. In re Lingafelter, 181 Fed. 24, 104 C. C. A. 38, 32 L. R. A. (N. S.) 103.

The decree will be reversed, and the cause remanded to the District Court, with directions to permit amendment of the bill so as to allege the actual transaction, and with leave to make the bank a defendant, and for further proceedings not inconsistent with this opinion. The costs of this appeal will be equally divided between appellant and complainant trustee.