W. S. PECK & CO. v. WHITMER. CITIZENS' BANK OF FRANKFORT, KAN., v. SAME. In re HELEKER BROS. MERCANTILE CO.

(Circuit Court of Appeals, Eighth Circuit. March 25, 1916.)

Nos. 4486, 4487.

1. BANKRUPTCY ⬩303(1)—CLAIMS—PREFERENCES—BURDEN OF PROOF.

In order to defeat, under Bankr. Act July 1, 1898, c. 541, § 57g, 30 Stat. 560 (Comp. St. 1913, § 9641), the claims of creditors who have received voidable preferences and have not surrendered them, the trustee in bankruptcy must prove, under sections 60a and 60b (section 9644), by a fair preponderance of the evidence, that the bankrupt was insolvent at the time the payments were made, that they enabled the creditors to receive a larger percentage of their respective debts than any other creditor of the same class, and that at the time each particular payment was made the creditors had reasonable grounds to believe that the enforcement of the payment would effect a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458, 459; Dec. Dig. ⬩303(1).]

2. BANKRUPTCY ⬩303(3)—CLAIMS—PREFERENCES—PART PAYMENTS.

Evidence held not to show that creditors, who received from their debtor, knowing him to be insolvent and during the four months preceding the filing of the petition in bankruptcy against him, payments, none of which exceeded 2½ per cent. of the amount of their claims, and which totalled only 18 per cent. of their claims, while during the same period other creditors whose claims amounted to 30 per cent. of the insolvent's indebtedness were paid in full, and there was sufficient in the hands of the trustee to pay 30 per cent. on the remaining debts, had reason to believe that they would result in a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 462; Dec. Dig. ⬩303(3).]

3. BANKRUPTCY ⬩166(1)—"PREFERENCE"—STATUTES.

Under Bankr. Act, § 60a, providing that a person shall be deemed to have given a preference if, being insolvent, he has within four months

---

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

before the filing of the petition made a transfer of any of his property, and the effect of the enforcement of such transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class, the phrase "will be" does not control the provision of section 60b that if a bankrupt shall have made a transfer of any of his property, and if at the time of the transfer he be insolvent and the transfer then operate as a preference, and the person receiving it or to be benefited thereby shall then have reasonable cause to believe that it would effect a preference, it shall be voidable, so as to make the time for determining whether the creditor had cause to believe that the payment operates as a preference the time of distribution, instead of the time of payment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250, 251; Dec. Dig. ☞166(1).

For other definitions, see Words and Phrases, First and Second Series, Preference.]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

In the matter of the Heleker Bros. Mercantile Company, bankrupt. From orders disallowing the claims of W. S. Peck & Co. and the Citizens' Bank of Frankfort, Kan., against the estate of the bankrupt, the claimants separately appeal. Orders reversed, and cases remanded, with direction to allow the claims.

William J. Gregg and J. D. Gregg, both of Frankfort, Kan., and Ernest S. Ellis and Frank W. Yale, both of Kansas City., Mo., for appellants.

A. L. Quant, of Topeka, Kan. (W. S. McClintock, of Topeka, Kan., and Edwin A. Krauthoff, of Kansas City, Mo., on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

CARLAND, Circuit Judge. These appeals are from orders disallowing the claims of appellants against the estate of Heleker Bros. Mercantile Company, a bankrupt, on the ground that within four months prior to the filing of the petition in bankruptcy, to wit, September 23, 1914, they had received voidable preferences. The facts with reference to the alleged preferences are as follows:

W. S. Peck & Co., doing business in New York City, within four months prior to the date last mentioned, received in the form of partial payments, made a week or more apart, from the bankrupt, which did business at Frankfort, Kan., the sum of $525. This sum was about 18 per cent. of the total indebtedness owing by the bankrupt to Peck & Co., and each payment was from $1\frac{1}{4}$ per cent. to $2\frac{1}{2}$ per cent. thereof. The Citizens' Bank, doing business at Frankfort, Kan., during the period of four months prior to the filing of the petition as before stated, received in partial payments from the bankrupt the sum of $621.68, which was about 18 per cent. of the total debt owing by the bankrupt to the bank, and no payment exceeded $2\frac{1}{2}$ per cent. of said debt. The payments were made through Gregg & Gregg, attorneys at law, residing at Frankfort, Kan. One of the Greggs was also

a director of the bank. Between January 24, 1913, and September 15, 1913, Gregg & Gregg collected the claims of 21 creditors of the bankrupt in full. Between May 19, 1914, and September 19, 1914, the bankrupt made payments to its creditors as follows:

| | |
|---|---:|
| Richardson Dry Goods Company | $1,238 80 |
| Morris Levy & Company | 22 50 |
| Perfection Manufacturing Company | 153 50 |
| Cutter & Crossette | 25 00 |
| S. Galewski | 20 00 |
| Omaha Rubber Company | 25 00 |
| A. Ratkowski .. : | 45 00 |
| Topeka Woolen Mfg. Company | 25 00 |
| Topeka Woolen Mfg. Company, Mdse. | 84 00 |
| Geo. P. Ide & Co. | 165 28 |
| W. S. Peck & Co., as follows: 5/24 $70, 6/7 $35, 6/14 $35, 6/21 $35, 6/28 $70, 7/7 $70, 7/18 $70, 7/31 $35, 8/7 $35, 8/14 $35, 8/23 $35— total | 525 00 |
| W. S. Peck & Co., Merchandise | 81 00 |
| Royal Worcester Corset Company | 15 00 |
| McCord Donavan Shoe Company | 160 00 |
| Jas. F. Coyle & Co. | 60 00 |
| Cooper Wells & Co. | 80 00 |
| Whittinghill-Harlow Shoe Company | 60 00 |
| Shoninger Heinsheimer Company | 10 00 |
| Richardson Shoe Company | 103 85 |
| McCaskey Register Company | 16 25 |
| P. W. Minor & Son | 119 90 |
| Boye Needle Company | 16 96 |
| Hamilton Brown Shoe Company | 80 00 |
| Interstate Rubber Company | 119 82 |
| Northwestern Knitting Company | 129 00 |
| Beloit Glove & Mitten Company | 165 00 |
| Jacob David Sons Co. | 250 00 |
| Morris Mann & Reilly | 74 23 |
| American Handsewed Shoe Company | 46 07 |
| Schmelzer Arms Company | 12 50 |
| The Bracken Company | 64 50 |
| Thos. D. Barry Company | 40 60 |
| Fred S. Todd Shoe Company | 25 00 |
| Outcault Adv. Company | 15 00 |
| H. H. Lobdell Company | 35 00 |
| F. Siegel & Bros. | 50 00 |
| Tootle-Campbell Company | 10 00 |
| Home Manufacturing Company | 30 00 |
| Wayne Muslin Uwear Company | 15 17 |
| Central Topeka Paper Company | 6 10 |
| Bush Hat Company | 100 00 |
| Bush Hat Company, merchandise | 97 88 |
| H. Burstein Company | 10 00 |
| K. C. Paper House | 7 30 |
| Shukert Furniture Company | 2 50 |
| Citizens' Bank | 621 68 |
| | $5,059 39 |

The aggregate of all the bankrupt's debts at the beginning of the four months period was $17,509.34. It would thus appear that the bankrupt paid about 30 per cent. of its indebtedness during the four months period. The appellants did not receive their proportion of the payments made when the amount of their indebtedness is considered.

These facts are stated as bearing on the question as to whether the payments were preferences and also as bearing upon the question as to whether appellants at the time they received the same had reasonable cause to believe that the enforcement of the payments would effect a preference.

[1] The following sections of the bankruptcy law are material in the consideration of the question as to whether the payments made were voidable preferences:

Sec. 57g: "The claims of creditors who have received preferences, voidable under section 60, subdivision b, * * * shall not be allowed unless such creditors shall surrender such preferences. * * *"

Sec. 60a: "A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition * * * made a transfer of any of his property, and the effect of the enforcement of such * * * transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

Section 60b: "If a bankrupt shall have * * * made a transfer of any of his property, and if, at the time of the transfer * * * the bankrupt be insolvent and the * * * transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such * * * transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

It thus appears that it is not sufficient to defeat the allowance of the claims of appellants that they received preferences as defined by law, but it also must appear that at the time the payments were made appellants had reasonable cause to believe that the enforcement of the payment or transfer would effect a preference. Therefore the burden of proof was upon the trustee to show by a fair preponderance of the evidence (1) that the bankrupt was insolvent at the time the several payments were made; (2) that the payments so made enabled appellants to receive a larger percentage of their respective debts than any other creditor of the same class; (3) that at the time each particular payment was made appellants had reasonable cause to believe that the enforcement of the payment or transfer would effect a preference.

[2] Where in any particular case it is shown that a creditor at the time he receives full payment of his debt knows that his debtor is insolvent or has knowledge of such facts, which investigated would show insolvency, it necessarily results that the creditor had reasonable cause to believe that the enforcement of the transfer would effect a preference. But in a case where the transfer or payment amounts to but a small percentage of the total debt, knowledge of the insolvency of the debtor or of facts which if investigated would lead to such knowledge is not conclusive upon the question as to whether the creditor had reasonable cause to believe that the enforcement of the transfer or payment would effect a preference. It will be observed that the language of section 60b provides:

"That if at the time of the transfer the bankrupt be insolvent and the transfer then operate as a preference, and the person receiving it shall then have reasonable knowledge to believe that the enforcement of the transfer would effect a preference, the same shall be voidable by the trustee."

It thus appears that the insolvency must exist at the time of the transfer, and the transfer must then operate as a preference and the creditor must then have reasonable cause to believe that the enforcement of the transfer would effect a preference. Let us assume that the record shows that the bankrupt was insolvent at the time the several payments were made, and that appellants had knowledge of such facts, which if investigated would have led to a knowledge of the insolvency, there would still remain to be established two important and material facts, viz. that the payments at the time they were made to appellants enabled them to receive a larger percentage of their respective debts than any other creditor of the same class, and that at the time each particular payment was made appellants had reasonable cause to believe that the payments would have this effect. The enforcement of the transfer when such transfer is in the form of the payment of money simply means if the payment shall stand as a legal payment.

We fail to find any evidence in the record that the appellants at the time they received the several payments had reasonable cause to believe that the enforcement thereof would effect a preference. On the contrary, the percentage of the total indebtedness of the bankrupt paid during the four months period amounted to about 30 per cent., which was about 27 per cent. in excess of the percentage received by the appellants if each individual payment is considered alone, and about 12 per cent. in excess if the total payments made to appellants be considered. It also appears from the record that the estate of the bankrupt has been reduced to cash and that the same will pay about 30 per cent. more of the total indebtedness of the bankrupt. In view of these undisputed facts, how can it be said that the appellants at the time they received the payments had then reasonable cause to believe that the enforcement of the transfer would effect a preference; that is, that it would result then and there if the estate of the bankrupt was distributed, in the appellants receiving a larger percentage of their debt than other creditors of the same class? We find no evidence upon which to base such a finding.

[3] Counsel for the trustee, however, seek to avoid the force of this contention by calling attention to the language of section 60a, defining a preference. The following clause is specifically referred to:

"And the effect of the enforcement of such judgment or transfer *will* be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

It is argued that the words "will be" refer to some future period, presumably to the time when, after the payment of all expenses, a bankrupt's estate is ready for, distribution by a court of bankruptcy. We are of the opinion, however, that by the very language of section 60b the payment must operate as a preference at the time it is made, or not at all, and the belief of the creditor as to whether it will constitute a preference or not, must be of the time the payment is made.

Taking the record as it stands, how could the appellants be held to have believed that if the estate of the bankrupt had been distributed at the time of these payments it would not have given every cred-

itor a greater percentage of their debts than they were receiving. The estate of the bankrupt at the time the payments were made, would have paid about 60 per cent. on the dollar. The creditor who receives a partial payment on his debt, so far as the question of his having reasonable cause to believe that the enforcement of the payment would effect a preference is concerned, has the right to look at the bankrupt's estate at the time the payment is made, bankruptcy may never occur; but if it does, the creditor may not be charged with a knowledge of what an estate will pay out after it has undergone the shrinking process of the courts.

We are therefore of the opinion that the trustee did not sustain the burden of proof in establishing that at the time the payments were made they operated as preferences, and that at the time they were made the appellants had reasonable cause to believe that the enforcement of the payment would effect a preference.

The decrees in each case are reversed, and the cases remanded, with directions to allow the claims of appellants.

TRIEBER, District Judge, concurs in the result.