## EYGES v. BOYLSTON NAT. BANK.

### SAME v. WALKER.

(District Court, D. Massachusetts. November 16, 1923.)

Nos. 1812, 1813.

1. **Bankruptcy ☞287(3)—Suit to recover preference held properly brought in equity.**

Suit to recover preference *held* properly brought in equity, especially where, in order to recover, a transfer of accounts receivable must be set aside.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Bankruptcy ⬉166(4)—Preference; creditor held charged with notice of debtor's insolvency when it received security.**

A bank *held* put on inquiry when it received assignments of the bills receivable of a commercial debtor to secure a prior indebtedness, and charged with notice of its insolvency, which reasonable inquiry would have shown.

**3. Bankruptcy ⬉303(3)—Creditor must surrender preference, unless it is clear that other creditors will receive equal percentage.**

It is not a defense to a suit by a trustee to recover a voidable preference that defendant has received no greater percentage of his debt than other creditors of the same class will receive, unless such fact is fully established.

**4. Bankruptcy ⬉168—One inducing bankrupt to prefer creditor must have profited thereby to render him personally liable.**

One who induced a bankrupt to prefer a creditor cannot be held personally liable for the amount of the preference, where he received no benefit from the transaction.

In Equity. Suits by Henry A. Eyges, trustee in bankruptcy of the Colonial Grocery Company, against the Boylston National Bank and against Maurice S. Walker. Decree for complainant in first suit, and for defendant in the second.

Philip W. Jacobs and Jacobs & Jacobs, all of Boston, Mass., for plaintiff.

Frederick Gilbert Bauer and Fowler, Bauer & Kenney, all of Boston, Mass., for defendant Boylston Nat. Bank.

Wendell P. Murray and Isaac E. Simons, both of Boston, Mass., for defendant Walker.

LOWELL, District Judge. [1] These are two bills in equity brought by the trustee in bankruptcy of the Colonial Grocery Company to recover alleged preferences. We are met at the outset with the motion in No. 1812 that the bill be dismissed, as there is a complete and adequate remedy at law. I have already held, in Reed v. Guaranty Security Corporation (D. C.) 291 Fed. 580, that the settled practice in this circuit is to allow a bill in equity to set aside a preference consisting merely in the payment of money. There is the further fact in this case that, in order to recover, a transfer of accounts receivable must be set aside. Such a remedy cannot be had in an action at law. The motion is denied.

Early in the year 1921 the defendant Walker bought all the shares of the Colonial Grocery Company. He applied to the defendant the Boylston National Bank for a loan. On February 4th and 15th the bank loaned the Colonial Grocery Company the sum of about $25,000 on three notes. One note, for $15,000, was indorsed by Walker, and two notes, for $5,000 each, were taken without indorsement; these two notes were discounted. All these notes were afterwards renewed, the two latter ones on May 5th. On May 23, 1921, the bankrupt assigned to the defendant bank substantially all of its accounts receivable as security for the two unindorsed notes. This was done by the orders of Walker at the instance of the bank, which called the bankrupt's attention to the fact that its deposit was very low.

The Colonial Grocery Company was adjudicated a bankrupt on a petition filed June 16, 1921. Subsequently Mr. Walker formed the Crown Flour Company, and gave to the bank its notes, indorsed by him, in the sum of $22,236.16, which represented the amount due on the notes of the Colonial Grocery Company, less the sum of $3,563.84, which the bank had received from the assigned accounts. The evidence showed that the accounts were not given to the Crown Flour Company, but are still held by the bank. It was also in evidence that between May 23 and June 16, 1921, new accounts were given from time to time to the bank in exchange for old ones, on which the Colonial Grocery Company had collected sums of money, which the company was allowed to keep.

Mr. Walker testified that he bought the shares of the Colonial Grocery Company under the assurance that he had been informed of all its debts. After that he learned of several large debts which it owed, and the situation of the company toward the end, in May and June, became worse and worse. He further testified that the value of groceries was continually falling during the spring of 1921. The testimony of an expert accountant showed that the company was insolvent on May 23, 1921. I am satisfied on the evidence that Walker knew that the company was insolvent on that date.

At the time of the assignment of the accounts the bank made no inquiries of Mr. Walker, or any one else, as to the financial condition of the company. It sent one of its officers, named Eldredge, to the place of business of the company, who stamped in the books, wherever the accounts receivable appeared, a statement that they had been turned over to the bank. Eldredge testified that the stock on hand seemed good, but that he was not acquainted with the wholesale grocery business.

Mr. Bailey, the president of the bank, testified that he did not consider a concern a good risk which "hocks" its accounts. He made no inquiries, however, and the reason was plain. The bank throughout took only a mild interest in the affairs of the bankrupt, because, as its president, Mr. Bailey, testified, he looked to Mr. Walker to stand back of the loan. His confidence in Mr. Walker was justified by the result, as we have seen that Mr. Walker took up the notes.

[2] I find on the evidence that the bank was put upon its inquiry as to the condition of the company (2 Black, Bankruptcy [3d Ed.] § 599; In re Sutherland Co. [D. C.] 245 Fed. 663; Tilt v. Citizens' Trust Co. [D. C.] 191 Fed. 441), and that if it had asked Mr. Walker it would have found that the company was insolvent. I therefore rule that, when the bank received the accounts, it had reasonable cause to believe that a preference would be effected, as it is charged with knowledge of facts which a reasonably careful investigation would have disclosed. Cases cited supra; Jacobs v. Saperstein, 225 Mass. 300, 114 N. E. 360.

[3] The ingenious argument is advanced that this is not a preference because the bank did not get a greater percentage of its debt than other creditors of the same class will probably receive. See In re Varley & Bauman Co. (D. C.) 191 Fed. 459. It is true that there is some

authority for this contention. 4 Remington, Bankruptcy (3d Ed.) § 1812, and cases cited; Peck & Co. v. Whitmer, 231 Fed. 893, 146 C. C. A. 89. This rule, however, has never been applied, so far as I am aware, except where at the time of the trial of the suit for an alleged preference it was clear that the same percentage would be paid to other creditors as to the one against whom the suit was brought. There is no such assurance in this case. There is the further circumstance in this case that on May 23, when the accounts were assigned, a security of sufficient value was given to the bank, from which it could have realized more than it actually did, as it allowed the bankrupt to keep certain sums which had been collected from the assigned accounts.

An order may be entered that the bank pay to the plaintiff the sum of $3,563.84, the amount received from the accounts, with interest on the payments making up this sum reckoned on each from the time of its receipt. As the accounts themselves are still in the hands of the bank and it has been decided that their assignment constituted a preference, a further order may be entered that the bank transfer the accounts to the plaintiff.

[4] In the case No. 1813 it is earnestly contended that Walker arranged the transfer of the accounts receivable to the bank, and did this in contemplation of bankruptcy. The evidence seems fairly to support this contention. The argument is then made that Walker is personally liable for the amount of money received by the bank, although he got no benefit from it. The case of Dean v. Davis, 242 U. S. 438, 37 Sup. Ct. 130, 61 L. Ed. 419, is especially relied on in this connection. In that case, however, and in the cases of In re Beerman (D. C.) 112 Fed. 663; In re Pease (D. C.) 129 Fed. 446; Roberts v. Johnson, 151 Fed. 567, 81 C. C. A. 47; In re Lynden Mercantile Co. (D. C.) 156 Fed. 713; Walters v. Zimmerman (D. C.) 208 Fed. 62; Marsh v. Walters, 220 Fed. 805, 136 C. C. A. 409; Saunders v. Russell, 171 Mass. 74, 50 N. E. 463; Bank of Wayne v. Gold, 146 App. Div. 296, 130 N. Y. Supp. 942; Golden v. Loring, 42 App. D. C. 489 (see, also, In re Soforenko [D. C.] 210 Fed. 562; Hackney v. Raymond Co., 68 Neb. 633, 94 N. W. 822, 99 N. W. 675), the further fact was in evidence that the person who was held liable had received security from the bankrupt, or some one acting for him or in his favor, for a payment of money which had been made to prefer certain creditors. That element is lacking in the case at bar, and in my opinion it is a necessary element to recovery.

The bill in No. 1813 may be dismissed.