**LATROBE et al. v. J. H. CROSS CO., Inc.**

District Court, E. D. Pennsylvania.
November 21, 1928.

No. 4421.

C. M. Butterworth, Jr., of Philadelphia, Pa., for plaintiffs.

Frank H. Schrenk, of Philadelphia, Pa., for defendant.

### The Pleadings.

DICKINSON, District Judge. This action was brought to recover from the defendant payments made within four months of bankruptcy by a debtor on a pre-existing debt. This cause of action is based on clause (b) of section 60 of the Bankruptcy Act (11 USCA § 96).

The defense is a denial of all fact averments upon which the right of recovery is based other than the fact of the payments; a denial that some of the payments were within the four months period; an averment that a $4,000 payment was not a payment on a past-due indebtedness, but a current cash payment; and the averment of a stipulation that a credit should be allowed for a 25 per cent. proportionate payment, which was made to all creditors.

### The Law of the Case.

The broad question of a preference has three aspects:

(1) The definition of what is a preference in the sense of a basis for an adjudication in a bankruptcy proceeding.

(2) What is a preference, which will be an obstacle to the enforcement by a creditor of a lien upon or a pledge of bankruptcy assets in the hands of the trustee?

(3) What is a preference, in the sense of a payment of money to the creditor which he must return to the bankruptcy estate at the suit of the trustee?

The last-mentioned kind of a preference is that with which we are here concerned, and is dealt with in clause (b) of section 60 in these words:

Any debt payment made within the four months period is voidable by the trustee in bankruptcy if "the bankrupt be insolvent and the * * * transfer then operate as a preference, and the person receiving it * ' * * shall then have reasonable cause to believe * * * such * * · * transfer would effect a preference."

There may be another question (with which we are not here concerned) very much akin to that of a preference. This may arise in determining the dividend share of a creditor claimant in the bankruptcy assets.

## The Fact Situation.

This divides into four branches:

(1) What payments were in fact made within the four months period?

(2) What payments were on an indebtedness before existing?

(3) The stipulated deduction to be made from any sum which the trustee should otherwise recover.

(4) The fact findings called for by section 60, clause (b), of the Bankruptcy Act.

## Fact Discussion.

The parties to any fact controversy are usually so intent upon the ultimate fact inference which each wishes to have drawn as not to develop clearly the evidentiary facts from which the ultimate facts are to be deduced. These might, for illustration, be an existing indebtedness, a demand by the creditor for payment, and the payment of the debt directly to the creditor. There might likewise be a like indebtedness, the closing of the account by a note, the transfer of the note by discount or otherwise to a bank or other endorsee, and the payment of the note in whole or in part to the holder. The difference in the fact situation might bear upon the conclusion of law of whether the money received was recoverable by the trustee in bankruptcy.

In the instant case the payments made have been treated as made to the defendant as creditor, and (with the exception of a $4,000 payment) to have been made on account of a debt then due. We have accordingly so viewed them, but the lack of definiteness in the presentation of the evidentiary facts has a bearing upon the broad finding of a recoverable "preference," to which we will later recur.

1. The first branch of the fact situation above outlined grows out of the circumstance that the payments sought to be recovered were made by checks, some of which were given before the filing of the petition in bankruptcy, but were charged up to the drawer's account by the bank on which drawn within the four months period. We are concerned here with an act. The act was a payment. The payment was made in that form of currency known as a check drawn against an account in a bank of deposit. The payee was under no requirement of law to accept payment in this form of currency, but, if it did accept it, we see no escape from the finding that the transaction was complete and ended at that time. There was nothing more for it to do. In strictness, the debt which the check paid was paid when the check was accepted in payment. It is true that there is an implied condition imposed upon such an acceptance that the check is what is called "good," but this condition is really nothing more than a legal fiction, raised to work out equities which may arise. As between debtor and creditor, the implied condition is of little, if any, value when it makes no practical difference whether the original debt or the debt evidenced by the unpaid check is owing. If the check is not presented for payment in "due course," and the bank fails, the payment stands, and the loss, if there be any, falls upon the payee.

We think the finding should be made that the payments sought to be recovered, which are represented by the check payments made under dates prior to December 20, 1925, were not made within the four months period, and should be deducted from plaintiff's claim.

2. The $4,000 payment was a current cash payment, and not one made on a pre-existing debt.

3. We interpret the brief submitted on behalf of plaintiff to mean that it is conceded that the 25 per cent. payment made to all creditors should be deducted from the plaintiff's claim. This concession is doubtless due to a recognition of the truth that no creditor could be found to know that a like percentage payment made to all creditors would work a preference.

4. This brings us to the remaining fact issues, which may be cast into the form of the following questions, which paraphrase section 60, clause (b), of the Bankruptcy Law:

(a) Was the debtor "insolvent" at the time the several payments were made respectively?

(b) Did the payment "then operate as a preference"?

(c) Did the defendant "then have reasonable cause to believe that [the payment] would effect a preference"?

These questions, to some extent, overlap. Our attention may be confined to the third, as embracing the whole gist of the inquiry. The fact that there are three is doubtless due to that curious trinity of phrases to which the legal profession is addicted. It is of the "grant, bargain, and sell" and "assign, transfer, and set over" type of expression. It is true, of course, that there are shades of meaning expressed. A debtor may be insolvent, and yet a payment made (being less than the creditor's dividend share) may not work a preference. A payment may work a preference, and yet the payee "have no reasonable cause to believe" that it will. It would be difficult, however, to conceive of a situation when the paid creditor knew he was getting a preference unless the debtor was insolvent and the payment did "then operate as a preference."

■ An affirmative answer to the third question thus carries with it a like answer to the others. A negative answer might not. "Reasonable cause to believe." Belief is that state of the mind otherwise expressed in the phrase of having a conviction of the truth respecting some subject of investigation or inquiry. An individual verdict, as any other verdict, should follow evidentiary facts gathered with due industry, properly marshaled, and the ultimate truths deduced therefrom by the logical processes of sound reasoning. If sufficient evidentiary facts are present, "reasonable cause to believe" is found to be present on the assumption that the reasoning faculty works automatically and inerrantly. This is not true of all of us, in forming our judgments in matters of business or in politics. Nothing is more common after an event than the recognition of this last-mentioned truth. The phrase "reasonable cause to believe" was doubtless chosen to express the thought that this defendant is presumed to have learned whatever truth the evidentiary facts should have taught it. The sight we are to take is, however, the sight then presented, and not the after sight which we now have.

This caution is especially called for in dealing with what we call "insolvency." No definition of legal insolvency ever has been or can be framed without employing terms so general as to be meaningless as a practical guide. There are instances, of course, in which a well-grounded opinion may be confidently expressed of solvency or insolvency, but often, and indeed usually, the sound view is that, if "given a chance," the debtor will meet all his obligations, but, if pushed to the wall, he will be "forced into insolvency." The criterion then is whether there is a reasonable expectation that he will be accorded this chance. The phrases "then operate as a preference," "did effect a preference," and the like, present a closer question, in that they mean that what is then received is more than what would otherwise be the proportionate dividend share of the creditor in the assets of the bankruptcy estate. Stated thus broadly, in the form of a general proposition, this in intelligible enough; but, like many broad general truths, any attempt to translate it into terms which have application to concrete facts is doomed to failure.

The only definite comparison which can be made between what a creditor receives and the sum which represents his proportionate share of the assets of his debtor is to contrast the two in terms of a percentage or dividend rate. It is, of course, conceivable that the fact situation might be such as that such a comparison might be made, but such a possibility would not be a denial of the manifest truth that no finding could ever be made that a creditor had the information which enabled him to make the comparison. None the less, although a creditor who receives a payment may not know the dividend rate which the payment represents, nor the dividend date which other creditors will receive, he may yet "have reasonable cause to believe" that the former is greater than the latter will prove to be, and, for this reason, will grab the payment.

This squarely presents to the mind the meaning of section 60, clause (b). The situation presented to the creditor is very much like, and indeed in principle is identical with, that presented by a composition offer. Will you accept a 40 per cent. payment, or take your chances of getting a larger dividend out of the assets of your debtor? If you accept the 40 per cent., it is because you have "reasonable cause to believe" that it is as much or more than you will otherwise eventually receive.

The analogue really presents a fortiorari proposition, because the wise creditor

would ordinarily accept "the sure thing" of the payment rather than "the chance" of getting more, even when his real state of mind was that he "had reasonable cause to believe" that he would get more by refusing than by accepting. The application of the suggested test casts the question to be answered in the following form:

██ Did the creditor, when the payment was made, have "reasonable cause to believe," not only that he would receive no further payment on his debt, but that what he received represented a larger dividend than the assets of the debtor would pay? Without going into the evidence in detail, the answer to this question is the negative one. There is nothing to indicate, or indeed suggest, that this creditor at the time of these payments entertained the "belief" that it would not be paid the balance due it, or until bankruptcy proceedings were instituted even doubted that the debt due it would be eventually paid.

The argument pressed upon us is that, if this creditor had been informed of all "the signs of the times," and had given them their due significance, it might have known what the future had in store. So, of course, it might; but we are inquiring not into what belief the creditor might have entertained, but into what belief there was "reasonable cause" to entertain, at the time. Very persuasive evidence of what this was is afforded by the attitude of the creditors, not only generally, but so far as this record discloses without exception. They all at that time were expecting to be paid in full.

There is no occasion to pursue the subject further. In the view we have taken of the broad fact situation, the subsidiary questions of fact are of no importance. We have, however, included them in the findings made, for whatever value the findings may be in any appellate experience the case may have.

### Findings of Fact.

1. The payments made by check before December 20, 1925, were not made within the four months period.

2. The $4,000 payment was not a payment made on any past-due indebtedness.

3. There was a stipulation that a 25 per cent. dividend deduction should be made from the sum of the payments received by the defendant.

4. At the time the several respective payments were made the defendant had "no reasonable cause to believe" that the receipt of the moneys paid would "effect a preference."

### Conclusions of Law.

1. The defendant should have judgment. No formal judgment is now entered, but the parties have each leave to move for judgment in accordance with this opinion; jurisdiction of the cause being retained for this purpose.

We have not discussed any of the numerous cases to which we have been referred, because every cause of this kind is ruled by the fact findings made. No one of these cases, however, is out of accord (when its special fact features are duly weighed) with the conclusion here reached. Among the cited cases are: Pittsburgh Plate Glass Co. v. Edwards (C. C. A.) 148 F. 377; Bassett v. Evans (C. C. A.) 253 F. 532; Levy v. Weinberg (C. C. A.) 20 F.(2d) 565; Stern v. Paper (D. C.) 183 F. 228; Commerce-Guardian Trust & Savings Bank v. Devlin (C. C. A.) 6 F.(2d) 518; Peck v. Whitmer (C. C. A.) 231 F. 893; In re Bird (D. C.) 180 F. 229; Walker v. Wilkinson (C. C. A.) 296 F. 850; City Nat. Bank v. Slocum (C. C. A.) 272 F. 11; Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971; First Nat. Bank of Philadelphia v. Abbott (C. C. A.) 165 F. 852; Whitney v. Dresser, 200 U. S. 532, 26 S. Ct. 316, 50 L. Ed. 584; Latrobe v. Gainsburg (oral memorandum, opinion by Thatcher, J., S. D. N. Y.).