## BAKER v. HAMBURG–AMERICAN PACKET CO.

### (District Court, D. Maryland. March 16, 1910.)

1. SHIPPING (§ 84\*)—LIABILITY OF VESSEL FOR INJURY TO STEVEDORE—DEFECTIVE CONDITION OF VESSEL.

   A ship *held* liable for an injury to a stevedore, resulting from the giving way of a hatch cover on which he stood to remove another section, caused by the fact that the crossbeam on which the fore-and-after rested was sprung, increasing the distance to be reached by the fore-and-after, and allowing the end to slip off.

   [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 349–351; Dec. Dig. § 84.\*]

2. DAMAGES (§ 132\*)—PERSONAL INJURY.

   An award of $4,500 made to a stevedore, 48 years old, for an injury which entirely disabled him for life, caused great suffering, and was probably of a progressive character.

   [Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385; Dec. Dig. § 132.\*]

In Admiralty. Suit by Henry Baker against the Hamburg-American Packet Company. Decree for libelant.

George T. Mister and Daniel B. Chambers, for libelant.
A. Leonard Brougham and Paul Johannsen, for respondent.

MORRIS, District Judge (orally). This is one of those unfortunate accidents to stevedores which are far too common. Stevedores work under conditions of a good deal of danger at the best. They work at night as well as in the daytime; they work rapidly and with energy, and not always with the greatest care to their own safety; and it not infrequently happens that they are injured without the fault of anybody but themselves. But, if it is shown that through the negligence of the shipowners they are given an unsafe place in which to work, and the injury happens on that account, and without fault on the stevedores' part, then the ship should be held liable.

The sole question in this case is whether the injury is attributable to the fault of the ship. There is not a great deal of conflict in the testimony. The testimony is very clear that the crossbeam on which the fore-and-after rested was sprung out of its true line—that it was sprung aft—the result naturally being to shorten the space on which the fore-and-after rested and rendering it likely to fall. That was a very dangerous defect. The fore-and-afters must have sufficient resting space to make them secure. The consequence was that when this libelant, standing on one of the hatch covers, which rested on these fore-and-afters, stooped over to reach one of the hatch covers and pulled upon it to raise it, the whole thing came down, and he and the hatch cover and the fore-and-after were precipitated into the hold, about 35 feet below.

The proof is very convincing that the aft crossbeam was sprung, and this increased the distance to be reached by the fore-and-afters which sustained the section of the hatch cover on which the libelant was

standing. It is proven, not by mere preponderance of evidence, but to a demonstration, that the crossbeam was sprung aft. It is proven that the next day, when they attempted to put in the fore-and-afters of the next section, the crossbeam was so much sprung that they could not get them in. They could only do it by pounding with the hatch covers and forcing the fore-and-afters into place. This had the effect of driving the bend in the cross-section into place and correcting the fault, and that is probably the way it had been done before the ship came into port; that is to say, when the fore-and-afters of the aft section were forced into place, they pushed the bend in the crossbeam forward and straightened it, and then there was resting place enough for the fore-and-after of the next section to hold on.

That, I hold, was a very unsafe condition. It is well known that in order to handle the hatch covers the men must go upon the hatch, and therefore the hatch should be made reasonably safe to bear that weight and to hold their position under that strain, and if they are not, and that is a permanent condition of the hatch of the ship, it is the fault of the ship. In this case it has led to a disastrous result.

It is said that there were bolts to hold these fore-and-afters in place. That, in itself, shows that there was some special occasion for bolts, and a natural conclusion is that they were put in because of this bend in the after crossbeam.. Now, without a special warning, and a very special warning, it would not be supposed by the stevedores that while in port these fore-and-afters would not be sufficient to bear a man's weight. At sea, where there is a great strain from the working of the ship, then they might have needed those bolts as a contrivance to help out the strain. Could it be anticipated that the hatch covers were so weakly supported that they would give way under the ordinary weight of a man? The fact that the bolts were used, I think, tends to show that there was a weakness intended to be overcome by this very unusual device. It could not be presupposed that these fore-and-afters should be bolted to make them safe to stand on.

I find that the libelant has made out a case which entitles him to damages. The amount of damages is a somewhat difficult question. This injured man is 48 years of age. He certainly had at least 10 years' expectancy of strength and vigor. He was a powerful man, had been foreman of the gang, and was a good workman, and he is entirely disabled for life. Vertebræ in his back are broken. He has suffered a great deal, and will continue to suffer, and the physicians say that his disability is probably of a progressive character. I do not think I can allow him less than $4,500, considering the character of the injury and the permanent disability which he has suffered.