### In re VARLEY & BAUMAN CLOTHING CO.

(District Court, N. D. Alabama, S. D. October 31, 1911.)

. No. 11,000.

BANKRUPTCY (§ 166*)—PREFERENCES—KNOWLEDGE BY CREDITOR OF INTENT TO PREFER.

A mercantile company, shortly before its bankruptcy, sent a circular letter to its creditors, in which it stated that its last season's business had not been good, and it was unable to meet its payments; that it was about to make a special sale, to be strongly advertised, for the purpose of paying its bills, and would prorate the receipts from the sale among its creditors; that it was solvent, and hoped to pay in full within 30 days. *Held*, that creditors receiving such circulars, and a few days thereafter small payments on their claims, were not chargeable with reasonable cause to believe that they were intended as a preference such as to render them voidable, although the debtor was in fact insolvent, and did not distribute the proceeds of the sale pro rata.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–258; Dec. Dig. § 166.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of the Varley & Bauman Clothing Company, bankrupt. On review of orders of referee disallowing claims of Simons & McGill and Weil & Livingston except on return of preferences. Reversed.

Roy McCullough, for petitioners.
Henry Fitts, for trustee.

GRUBB, District Judge. These matters are heard on petitions to review orders of the referee disallowing the receipt of dividends on the claims of Simons & McGill and Weil & Livingston until payments received by them from the bankrupt had been applied as offsets to dividends pro tanto, upon the theory that the payments constituted preferences, and should be surrendered to the trustee as a condition to the allowance of the claims on the basis of the other creditors.

The bankrupt at and prior to the time of the filing of the petition was in the retail clothing business in Birmingham, Ala. Its mercantile bills had remained unpaid after maturity for some time prior to the filing of the petition, and it was being pressed for payment on them. On or about March 14, 1911, the bankrupt got up a special sale, which was conducted by a foreign firm on a commission basis, and was advertised as a bankrupt sale. On March 14th the bankrupt advised its creditors of this sale by circular letter of the following tenor:

"We are writing to acquaint you with the fact that we are about to conduct a special sale, the notices of which will be very strong. We will ask you to pay no attention to the rumors that may be spread by our competitors regarding this sale.

"We are frank to say to you that our last season's business did not come up to the standard, and it was impossible for us to meet our obligations. We find it necessary at this time for us to go to the limit. We are putting on this sale to liquidate our indebtedness. We will prorate the money after each day's sale among our creditors, and, we hope, in the next thirty days to pay dollar for dollar.

"We thank you for past favors. We wish you to distinctly understand that we are perfectly solvent, but we are going to the extreme in this sale in making strong advertising.

"We hope this course will meet your approval.
"Respt. [Signed] Varley & Bauman Clo. Co."

On March 17th the bankrupt wired, among others, the two creditors who seek the review that they were putting on a strongly worded sale; that lawyers were trying to make trouble; that they were telegraphing creditors, and asking a telegraphic answer. The circular letter contained the assurance that the bankrupt would remit the proceeds of each day's sale pro rata to its creditors until their claims were paid, and hoped to be able to satisfy them in full within 30 days. The sale was put on, and the bankrupt thereafter, and after each of the reviewing creditors had received the circular letter and telegram mentioned, remitted to Weil & Livingston $42.25 on an account due them of $617.-63, and to Simons & McGill $50 on an account due them of $184.30. These payments are supposed to constitute the preferences.

It is conceded that the bankrupt was insolvent prior to the date of the issuance of the circular letter and the putting on of the special sale, and that its president knew of its condition. The only element

of uncertainty is whether the reviewing creditors who received the preferences had reasonable ground at the time of the payments for believing that a preference was intended by the bankrupt. The letter and telegram contain the only facts upon which notice is sought to be fastened on these creditors of this intent. They show to any reasonably prudent business man that the bankrupt was in embarrassed circumstances, and not able to meet its obligations as they matured. It has been held that this does not constitute notice of insolvency as that term is defined in the present bankruptcy act. In re Goodhile (D. C.) 130 Fed. 782. It seems, however, that it would be sufficient at least to put the creditors on inquiry, when unaccompanied by qualifying circumstances. In this case the bankrupt forewarned the creditors against taking alarm from the character of advertising it was about to do, by stating that it was for trade purposes altogether, and its warning was calculated to disarm the suspicion that otherwise might attend such action. The effect of the information conveyed by the bankrupt to its creditors, that lawyers were trying to make trouble, was mitigated by the implication the telegram carried with it, that this was caused by the strong advertising the bankrupt was engaged in, and which it had assured the creditors was only indulged in for trade purposes. Special sales are occasionally advertised as bankrupt sales for this purpose by solvent merchants. The creditors were certainly charged with notice, however, that the bankrupt was hard pressed for ready money to pay its debts, could not meet them as they matured, and was conducting this special sale for the purpose of raising money to pay its debts. The accompanying assertion of solvency and assurance of ability to realize enough in 30 days to pay its creditors in full of itself would not suffice to offset this admission of embarrassment. The creditor, however, must have notice, not only of the insolvency of the bankrupt, but of its intent by the payment to prefer. In the absence of qualifying circumstances, notice of insolvency at the time of payment would carry with it notice of the intent to prefer, since this is the natural effect of the payment to one creditor alone by an insolvent. However, if the payment, though by an insolvent, was a pro rata one among all creditors, no preference would be created by it.

In this case there was the promise of a pro rata distribution of the proceeds of the sale among all creditors. This promise, accompanying the notice of the sale and of the bankrupt's embarrassed condition, was, however, not kept by the bankrupt. The sale, was, in fact, conducted primarily in the interests of the president of the bankrupt corporation, as much of the stock as possible was converted into cash and appropriated to his use, and only such creditors were paid as it was believed necessary to pay in order to prevent them from taking legal action against the bankrupt. The reviewing creditors, however, had no knowledge of its intention not to live up to the assurance given in its circular letter, or of the fact that it had in fact failed to do so, until after their receipt of the payments. The payments were made to them without any subsequent solicitation on their part, and it was natural for them to assume that the payments were remittances made in pursuance of the promise to prorate, made in the circular letter, and not

payments made with intent to prefer them over other creditors. The payments, whether considered absolutely or relatively to the amounts owing, are so small of themselves as to excite no suspicion of intent to prefer, and the reviewing creditors may well have 'believed that each creditor of the bankrupt was being remitted in the same proportion. The burden is on the trustee to show that the creditors had reasonable ground to believe otherwise, and that they were getting more in proportion than the other creditors. The letter of one of the reviewing creditors to the bankrupt in response to the circular, asking the bankrupt whether they were to expect a daily check for their pro rata of the proceeds of the special sale, tends to show that this was the actual impression produced on them. A prudent business man might reasonably have believed from the assurance contained in the circular that the payment was a pro rata payment to all creditors, arising out of the proceeds of the special sale which was being conducted to reduce the bankrupt's indebtedness, and hence in other respects one made in the regular course of business.

If the reviewing creditors did in fact believe, and would as prudent business men reasonably have believed, from their correspondence with the bankrupt that the small payments were made to them, share and share alike with all the other creditors of the bankrupt, from the proceeds of the special sale, conducted by the bankrupt for that purpose, then the receipt of them by the creditors would not in my opinion constitute a voidable preference, even though the bankrupt was insolvent, had knowledge of its condition, and made them with intent to keep the creditors quiet, and not to distribute its assets equally among its creditors, and even though the creditors were charged with knowledge of its embarrassment or even of its insolvency. The usual inference to be drawn from a payment made by an insolvent of an intent to prefer the recipient would in that event be displaced by the assurance of the bankrupt that the payment was not exclusive, but was shared in by all creditors alike. It seems to me that a prudent business man would reasonably have drawn this inference from the correspondence set out in the record in the case. Cases in point are Tumlin v. Bryan, 165 Fed. 166, 91 C. C. A. 200, 21 L. R. A. (N. S.) 960, 21 Am. Bankr. Rep. 319 (C. C. A., 5th Cir.) ; Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971; Stucky v. Masonic Savings Bank, 108 U. S. 74, 2 Sup. Ct. 219, 27 L. Ed. 640; Barbour v. Priest, 103 U. S. 293, 26 L. Ed. 478; First Nat. Bank of Louisville v. Holt, 155 Fed. 100, 84 C. C. A. 16, 18 Am. Bankr. Rep. 766 (C. C. A., 6th Cir.).

The petitions for review in each case will be granted, and the referee will be requested to permit the reviewing creditors to share in the dividends on the basis of their allowed claims without deduction for payments received by them before the petition was filed, and the costs will be taxed against the bankrupt estate.