## COMMERCE-GUARDIAN TRUST & SAVINGS BANK v. DEVLIN.

(Circuit Court of Appeals, Sixth Circuit.
June 30, 1925.)

No. 4268.

1. **Bankruptcy ⬤165(1)—Creditor who accepted payment on account to extent of 48 per cent. of claim shortly before bankruptcy received preference, though liabilities were only twice amount of assets.**

Though bankrupt's liabilities were about twice amount of assets, a creditor who was paid 48 per cent. of its claim shortly before bankruptcy received a preference, since if preference were upheld, creditor could still claim balance of debt and share with others in distribution.

2. **Bankruptcy ⬤184(2)—Sale of pledged assets by pledgor held not to give pledgee lien on other property as against rights of general creditors.**

Where motor car company gave bills of sale for new cars purchased by it to bank, and retained possession of cars under trust receipts, agreeing not to sell except by permission, liens attempted thereby were void as against creditors for failure to record as required by Gen. Code Ohio, §§ 8560, 8561, 8568, and Bankruptcy Act, §§ 47, 60, 70 (Comp. St. §§ 9631, 9644, 9654), and wrongful sale of cars merely rendered bank an unsecured creditor, and gave it no lien upon replacement parts retained in stock as against general creditors.

3. **Bankruptcy ⬤467—Error, if any, in exclusion of testimony, not prejudicial, where evidence rejected could not have affected substantial rights.**

In action by trustee in bankruptcy to recover alleged preferential payments, where evidence strongly preponderated in favor of conclusion of insolvency, error, if any, in exclusion of evidence of offers to buy business and opinions of prospective buyers as to value about time alleged preferential payments were made, as bearing on question of solvency as a going concern, *held* not prejudicial within Jud. Code, § 269 (Comp. St. § 1246).

In Error to the District Court of the United States for the Northern District of Ohio; Paul Jones, Judge.

Action by William B. Devlin, trustee of the Toledo Hudson-Essex Company, bankrupt, against the Commerce-Guardian Trust & Savings Bank. Judgment in favor of trustee, and defendant brings error. Affirmed.

George W. Ritter, of Toledo, Ohio (Ritter & Schminck and John S. Brumback, all of Toledo, Ohio, on the brief), for plaintiff in error.

Wm. B. Devlin, of Toledo, Ohio, for defendant in error.

Before DONAHUE, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. This writ is to review a judgment under section 60 of the Bankruptcy Act (Comp. St. § 9644) against plaintiff in error (hereinafter called the bank), and in favor of the trustee in bankruptcy, by way of recovery of alleged preferential payments made by the bankrupt, which was engaged during 1920 and 1921 at Toledo, Ohio, in the business of selling Hudson and Essex automobiles. On November 18, 1921, the bankrupt owed the bank more than $14,000 for money loaned from time to time, beginning about August, 1921, represented by bankrupt's notes, and secured, as between the parties, by bills of sale conveying to the bank the title to new automobiles purchased by the bankrupt. These automobiles were never in fact delivered to the bank, but were retained in the possession of the bankrupt at its place of business, the latter giving the former so-called trust receipts, whereby the bank agreed "to take and hold said automobiles as the purchase of said bank for the purpose of storing the same," and not "to sell, loan, rent, deliver, mortgage, pledge, or otherwise dispose of" the automobiles except upon written order from the bank "for release from trust," upon payment to the bank of the amount required by such order, etc. The bankrupt was also liable to the bank on account of notes given by bankrupt's customers for automobiles purchased, secured by chattel mortgages for the purchase price, which customers' notes and mortgages had been sold to the bank. By some date in October, 1921, the bankrupt had sold, in the course of its business, and without the bank's then knowledge, all of the automobiles pledged to the bank, accounting to the latter for none of the proceeds.

The alleged preferential payments were made November 18 and November 30, 1921, and thus within four months before the filing of petition for adjudication of bankruptcy, viz. January 6, 1922. Adjudication was had January 22, 1922.

There was express testimony tending to show the bankrupt's insolvency at the time the payments in question were made to the bank, for example: The bankrupt's bookkeeper testified that on November 18 and November 30 the bankrupt's assets were approximately $12,000 and its liabilities approximately $25,000. True, this estimate was on the basis of a liquidated business, but there was substantial testimony tending to show that the business was rapidly nearing

liquidation, if indeed that result was not then inevitable. There was additional evidence tending to show insolvency. There was also substantial evidence that, when the alleged preferential payments were made, the bank had reasonable cause to believe that the payments in question would effect a preference. In October, 1921, the bank's secretary, having learned at the bankrupt's place of business that the pledged automobiles had all been sold, had an interview with the bankrupt's president. A few days later the bankrupt returned to the agency from which it had obtained its own agency contract the great bulk of bankrupt's stock of replacement parts; the proceeds of those retained by the manufacturer's agency (amounting to about $5,800) being paid to the bank, together with $500 of the deposit which had been made by the bankrupt with that agency as security for the bankrupt's contract herewith. These sums, aggregating about $6,300, constituted the alleged preferential payments.

[1, 2] We see no merit in the suggestion that the bank got no greater percentage on its own claim (about 48 per cent.) than creditors generally would have had, if we accept the estimate of 50 per cent. made by the bankrupt's bookkeeper. The bank actually received 100 per cent. on $6,300 of its claim, and, if the preferences were upheld, would be entitled to receive upon the balance of its claim the same percentage as other creditors of the same class. Nor did the fact that the bankrupt had, as against the bank, wrongfully sold its pledged assets, give the latter a lien as against the rights of general creditors in the proceeds of the replacement parts. The bank's liens, by the way of bills of sale, trust receipts, or otherwise, were never recorded or filed, as provided by the Ohio statutes, and so were void as against creditors of the mortgagor, both by the statutes of that state and under the Bankruptcy Act. Ohio Gen. Code, §§ 8560, 8561, 8568; Bankruptcy Act, §§ 47, 60, and 70 (Comp. St. §§ 9631, 9644, 9654). After the pledged automobiles were sold the bank was merely an unsecured creditor as respects the debts attempted to be secured thereby. The bank had no lien upon the replacement parts. Cases such as Smith v. Township of Au Gres (C. C. A. 6) 150 F. 257, 80 C. C. A. 145, 9 L. R. A. (N. S.) 876, and Erie R. Co. v. Dial (C. C. A. 6) 140 F. 689, 72 C. C. A. 183, are not pertinent. In each of those cases a trust relation was involved. In the instant case the relation was merely that of debtor and creditor, notwithstanding the form of "trust receipt" adopted. We do not understand plaintiff in error to contend otherwise, with respect to the alleged preference, and, where no lien or trust is involved, the trustee in bankruptcy does not stand merely "in the shoes of the bankrupt."

The trial court thus properly refused to instruct verdict for defendant, and committed no error in its instruction to the effect that the bank came ultimately into the same class with the other general creditors of the bankrupt.

[3] The only remaining question requiring consideration is whether there was reversible error in excluding the testimony of three witnesses offered by the bank as bearing on the question of bankrupt's solvency as a "going concern." One of the witnesses testified, in substance, that in October, November, or December, 1921, he was shown by the bankrupt's president a certain financial statement of its business. In advance of the formal proffer of testimony of a proposal by the witness to purchase the bankrupt's business, or an interest in it, the court asked whether the proposal "was made on this statement or his actual investigation." Defendant's counsel replied: "I think on this statement." The court said: "Unless this man actually went up there and appraised this property and examined their books, this would only be hearsay, so far as he is concerned." There was no showing that the witness actually examined the books and appraised the property. He said: "I did not make any careful appraisal or any inventory or look over the stock carefully or anything like that. I just walked through the building and took sort of a bird's-eye view of the conditions, etc." The court excluded proffer of testimony that the witness offered for the bankrupt's assets and business $10,-000 plus the amount of the liabilities, and that its president offered to take that amount, provided he were retained as general manager at an annual salary of $6,000, and that in the opinion of the witness the assets and business were worth $10,000 more than the liabilities.

The testimony of the second witness differed principally in the fact that, while he negotiated with the bankrupt's president, he made no offer, but received one. His opinion of the value of the business at the time was excluded, apparently for the same reason as that of the other witness. While he says he "made an examination of the property at the office and place of business and

salesroom of the bankrupt," and that he "formed an opinion as to the reasonable value of the business and property of the bankrupt as it was at that time (November, 1921) as a going concern," he does not say in terms that his opinion was based on his own examination. He too was given a copy of the financial statement referred to.[1] We are not persuaded that the refusal to receive the opinions was error.

But if there was technical error in that regard, we think the judgment should not be reversed for that reason. The statement in question, made as for the year ending November 30, 1921, showed nominal assets of $64,891.28, and liabilities of $29,350.72. The assets were apparently greatly overvalued. The great bulk of the "parts and accessories," valued at something more than $16,000, sold, as already stated, for $5,800. There was also included in that statement $10,000 as the value of the agency contract, which, unless renewed, would apparently expire November 30, 1921. During that year, as shown by the statement, there had been a net loss of more than $26,000. It had already appeared in the case that three cars listed in the statement at $6,426 had been turned over to the bank and credit of $1,500 given the bankrupt therefor. It had also appeared that in December a receivership over the bankrupt's property was created in a state court. It would be a not unnatural inference that the offer in the case of the one witness, and of opinion value of the other two, were largely speculative, and not improbably based, in large part at least, upon the advantage likely to result to the purchaser in the matter of obtaining a renewal of the agency contract. The evidence strongly preponderated in favor of a conclusion of insolvency, and it seems improbable that the opinion evidence so rejected so far affected the substantial rights of the bank as to call for reversal, in the face of the statutory provision that "the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." Judicial Code, § 269 (Comp. St. § 1246); West v. United States (C. C. A. 6) 258 F. 413, 415, 169 C. C. A. 429.

Being of opinion that no reversible error was committed upon the trial, the judgment of the district court is affirmed.

---

[1] The proposed testimony of the third witness and its competency were no more favorable to the bank than that of the second witness.