### MANSFIELD LUMBER CO. v. STERNBERG.*

### STERNBERG v. MANSFIELD LUMBER CO.
### Nos. 8640, 8641.

Circuit Court of Appeals, Eighth Circuit.
Feb. 6, 1930.

*Rehearing denied April 10, 1930.

A. M. Dobbs, of Ft. Smith, Ark., for Mansfield Lumber Co.

Joseph R. Brown, of Ft. Smith, Ark. (James B. McDonough, Jr., of Ft. Smith, Ark., on the brief), for Sternberg.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and DEWEY, District Judge.

BOOTH, Circuit Judge.

There are here an appeal and a cross-appeal from a decree in favor of the plaintiff, Henry Sternberg, trustee in bankruptcy of the estate of Jeff Porter Nix, bankrupt, in a suit against the Mansfield Lumber Company to set aside an alleged voidable preference, and to recover the property transferred or its value.

The complaint of the trustee alleged, in substance, that the bankrupt on the 6th of February, 1928, eleven days before the filing of a voluntary petition in bankruptcy, made a transfer of property, both real and personal, to the Mansfield Lumber Company, which enabled that company to obtain a greater percentage of its debt than other creditors of the same class, that Nix was insolvent at the time, and that the Mansfield Company then either knew, or had reasonable cause to believe, that the enforcement of the transfer would effect a preference. The transfer was contained in a contract between Nix and the Mansfield Lumber Company, which was attached to the complaint. This contract provided for a number of things: First, certain real estate and a diamond ring were conveyed by Nix to the Mansfield Company of the stat-

ed value of $7,800; second, certain equities in real estate were conveyed to the Mansfield Company; third, the Mansfield Company assigned to Nix a certain lot of notes held by it which were made by Nix or indorsed by him, amounting to $3,800; and, fourth, the Mansfield Company released its claim on notes either made or indorsed by Nix, amounting to $21,000, secured by mortgage on real estate; that is to say, it released Nix from all personal liability on the notes, but retained the real estate security.

The case was tried, and the amount awarded by the decree in favor of the trustee in bankruptcy and against the Mansfield Lumber Company was $1,637.

The Mansfield Lumber Company on its appeal contends that no judgment should have been awarded against it, on the ground that the evidence failed to show that the Mansfield Company, through the transfer, was enabled to obtain a greater percentage on its claim than other creditors of the same class, or had reasonable cause to believe that the enforcement of the transfer would effect such a preference; and, further, that the evidence failed to show that Nix was insolvent at the time.

The trustee in bankruptcy has appealed, on the ground that he was entitled to recover the value of the real estate and diamond ring transferred by Nix to the Mansfield Lumber Company as stated in the conveyance, viz. $7,800, instead of $1,637.

The relevant provisions of the Bankruptcy Act are as follows:

Section 60. "(a) A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication * * * made a transfer of any of his property, and the effect of the enforcement of such * * * transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. * * *

"(b) If a bankrupt shall * * * have made a transfer of any of his property, and if, at the time of the transfer * * * and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the * * * transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such * * * transfer would ef-

fect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person." 11 USCA § 96.

As a prerequisite to recovery, it was necessary for the trustee to show amongst other things: (1) That there was a transfer of property by Nix to the Mansfield Lumber Company; (2) that the transfer was within four months prior to the filing of the petition in bankruptcy; (3) that Nix was insolvent at the time of the transfer; (4) that the enforcement of the transfer would enable the Mansfield Company to secure a greater percentage on its claim than other creditors of the same class; and (5) that the Mansfield Company knew this or had reasonable cause to believe it. Remington on Bankruptcy (3d Ed.) § 1630 et seq.; Mayes v. Palmer, 208 F. 97 (C. C. A. 8); W. S. Peck & Co. v. Whitmer, 231 F. 893 (C. C. A. 8).

The evidence leaves no doubt that there was a transfer, and that it was within four months prior to the filing of the petition in bankruptcy.

On the question of insolvency, we think the evidence was also sufficient. The proof showed that the liabilities of Nix at the time of the transfer amounted to $272,664. Of this amount one item, $81,000, was a liability of Nix as maker on notes secured by mortgage on real estate; to this real estate as an asset Nix would have recourse in case he paid the notes. The value of this real estate as given in the schedules was $124,100. Another item of the $272,664 was $189,506, which represented liability of Nix as indorser on notes secured by mortgages on real estate. On these notes third persons were liable to Nix, so that, if he was obliged to pay the notes, he would have recourse against the makers and against the real estate as an asset. The value of the real estate behind this item $189,506 was given in the schedules as $313,305. The schedules also showed assets of Nix consisting of real estate, personal property, etc., amounting to $72,138. On the face of the schedules, therefore, Nix appeared to be solvent.

But the other evidence given on the trial told an entirely different story.

It appeared "* * * that Nix had been engaged in the real estate business in Fort Smith since May, 1920. He bought city lots, built houses on them and sold them to purchasers. In order to pay for the material used and labor performed in building houses he made a mortgage upon the lot on which the house was to be built. He used the proceeds of the loan in building the house. He

would then sell the house and the purchaser would assume the mortgage. Nix would then take a second mortgage to secure the difference between the amount of the first mortgage and the purchase price. He would then sell the notes secured by the second mortgage. His business was quite extensive. The Mansfield Lumber Company sold building material. Nix was a heavy purchaser from it."

Nix testified: "I went to Mr. Packard somewhere around the 20th of the previous January and told him unless I could make a settlement with some of the things that I was obligated for on property that had been sold and was going bad, that I couldn't continue the business any longer. [Mr. Packard was general manager of the Mansfield Lumber Company.] * * * We discussed it back and forth at various times until we agreed on a settlement that they would release me for. * * * I was obligated to them on somewhere in the neighborhood of as well as I remember, between twenty and twenty-five thousand dollars worth of paper. Most of that we figured would not pay itself out if I was to step out of it personally. * * * I furnished all of those with whom I tried to make settlement, with a duplicate copy of what I owned."

Nix further testified " * * * that he told Packard that he believed if he would be able to divide up his stuff between the folks that he owed or was responsible on in accordance with what they would probably lose in the matter, and maybe be able to go ahead and do business."

Again: "I had $7,000.00 or approximately $7,000.00 in cash * * * when, I decided that I was going to make some kind of arrangement, or some kind of settlement, that I had carried these things as far as I could. I took that money and paid all of my unsecured debts except $840.00, and that man was willing to wait and risk me until I could get where I was able to pay it later. Then I undertook to take what property I had and pro-rate it around among the folks that thought they would take a loss. And if I could have done that and got practically all this settled, then I felt like I could borrow enough money on my homestead to go ahead and take care of the judgments or the property that came back, as fast as it came back without the ones that would not make a settlement with me. Of course, now I know I would not have been able to do that, even had I been able to settle with the other folks."

Again: "I talked to Mr. Packard on various occasions, it might be possible I would

pull through, and it might be possible I would have to go into bankruptcy, but if I could get all the second mortgages with these people, it looked like I was going to make settlements with them, then I believed I could meet the others, and if the things got better like the real estate board and all felt like they should, I would be able to pull through the whole thing."

Again: "I told them I would not borrow money on my homestead and did not feel safe to borrow money on my homestead until I had things cut down to where I could save it."

The trustee in bankruptcy testified that, during the period of a little over a year which had elapsed between the adjudication in bankruptcy and the trial, he had been able to collect but $723 from the assets of the bankrupt; and that the best offer he had received for the remaining assets was $50.

In view of the foregoing and other similar testimony, we think the trial court was fully justified in finding that Nix was insolvent on February 6, 1928, the date of the transfer in question.

The next question to be considered is, Would the enforcement of the transfer enable the Mansfield Company to obtain a preference; i. e., to obtain a greater percentage of its claim than other creditors of the same class. The trial court answered this question in the affirmative. We are unable to concur in that conclusion.

■ It is manifest that, if all creditors of the same class were to receive the same percentage on their debts, there would be no preference. Remington on Bankruptcy (3d Ed.) § 1807. Or, if enough assets were left after a transfer to one creditor to give to other creditors in the same class an equal or greater percentage of their debts, there was no preference. Remington on Bankruptcy (3d Ed.) § 1812; W. S. Peck & Co. v. Whitmer, supra; Swarts v. Fourth Nat. Bank, 117 F. 1 (C. C. A. 8); Hart v. Emmerson-Brantingham Co. (D. C.) 203 F. 60, 63.

The evidence in the case at bar shows that the only creditors to be considered are of the same class as the Mansfield Company; that the total amount of their claims is $6,018; that the assets collected and collectable by the trustee amount to $773. It is estimated that $75 will cover the fees of the trustee and other expenses. This would leave $698 for distribution—a dividend of 11 per cent. plus.

What did the Mansfield Company receive? The trustee contends that it received property of the value of $7,800, the amount stated

in the instrument of transfer. The Mansfield Company contends that the real value of the property which it received was what the company had been able to obtain for the same at a fair sale, and that this was $1,637. The trial court evidently took this view, as this was the amount allowed to be recovered; and the trial court held that the value stated in the instrument of transfer was not binding.

We think the trial court was correct in these holdings. The value with which the Bankruptcy Act is concerned is true, actual value, which may or not be the value agreed upon by the bankrupt and a creditor for a special purpose. In the case at bar the value mentioned in the contract was the estimate of the bankrupt himself when he was trying to distribute his assets ratably among his various creditors. He testified that the value stated in the contract was not a cash value, and that the Mansfield Company said that the property transferred, with the exception of the ring, was not worth anything. If his creditors were willing to take the bankrupt's appraisal of his own property for such special purpose, and settlements with all creditors were made on that basis, there would be no one to object. But, when such a settlement is made with less than all creditors, the trustee, as a representative of the remaining creditors, is interested in the actual value of the property transferred. If in the case at bar the value of the property transferred to the Mansfield Company was stated in the contract to be $100, it can hardly be supposed that the trustee would consider himself bound by the recital of such value. The true value in all such cases must be ascertained.

The burden of proof in the instant case was upon the trustee to establish such value. He introduced the instrument of transfer with the value therein stated. The defendant Mansfield Company introduced testimony of what they were able to get for the property after repeated efforts to sell.

In view of the character of the instrument of transfer and the purpose for which it was made, as above stated, in view of the gross overvaluation of the bankrupt's property as given by him in his schedules filed, in view of the absence of other evidence of value of the property transferred, the burden being upon the trustee, we think the rejection by the court of the value stated in the contract, and the adoption of the sale value, were fully justified.

The amount of the claim of the Mansfield Company was at least $21,000. Adopting $1,637 as the value of the property received from the bankrupt by the transfer, it results that the Mansfield Company obtained on its debt 7.79 per cent.—a percentage less than the other creditors in the same class will receive. There was a failure of proof, therefore, on the part of the trustee that the transfer operated as a preference. The bill for this reason should have been dismissed.

Although the foregoing disposes of the appeal, we may add that in our opinion the evidence was insufficient to show that the Mansfield Company, in receiving the property transferred, had reasonable cause to believe that the transfer would result in its obtaining a preference. It may be conceded that the Mansfield Company knew that Nix was insolvent. It also knew that Nix was attempting to divide his property amongst his creditors. There is no evidence, however, that it had knowledge of facts, or that any facts existed, which reasonably would lead it to believe that other creditors in the same class as itself would not receive a percentage on their debts at least as large as the small percentage it received.

In view of these conclusions, it becomes unnecessary to discuss other questions in the case.

The decree is accordingly reversed, with instructions to dismiss the bill. The Mansfield Company will recover costs in its own appeal only.