## IRVING TRUST CO. v. TOWNSEND et al.
### No. 361.

Circuit Court of Appeals, Second Circuit.
May 29, 1933.

Charles Dickerman Williams, of New York City, for plaintiff-appellant.

Barker, Perrigo & Bonygne, of New York City (Robert J. Sykes, of New York City, of counsel), for defendant-appellee Whist.

Maass & Davidson, of New York City (Wilbur C. Davidson, of New York City, of counsel), for defendant-appellee William W. Townsend.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff as trustee in bankruptcy of W. W. Townsend & Co., Inc., sued the defendants to recover $5,000 claimed to have been transferred in fraud of creditors, or, at least, under circumstances which amounted to a voidable preference.

The bankrupt corporation was, in 1929, doing business in New York City in selling securities. William W. Townsend, one of the defendants, was its president and owned 30 per cent. of its stock. The defendant Whist, whose business was in Paris, France, interested the Townsend Corporation in a scheme to promote a new company and sell its stock to the American public. The idea was to form a holding company which would acquire the controlling stock interest in several insurance companies in Europe, including the Malaren Insurance Company in Sweden. Options were to be obtained by the Townsend Corporation on sufficient stock in these foreign companies, and these options were to be turned over to the new company which was to be organized under the name of Domestic and Foreign Insurancestocks Corporation. The money to take up the options was to be obtained from the sale of the stock of the new corporation. Whist already had some such options and the bankrupt sent its president to Europe to investigate the proposition. He had no express authority to contract to buy stock, but only to secure options for its purchase and to have some options extended.

Among other things, an extension of an option on the stock of the Malaren Insurance Company was desired. Townsend and Whist went to Oslo, Norway, to confer with a man named Hirsch in regard to that matter. Hirsch had authority to extend the option, but was not willing to do so. He was willing to extend the time within which payment for the stock should be made provided Townsend personally would agree to buy it. Hirsch was unwilling to accept the obligation of the Townsend Corporation as the purchaser. Up to this point, Townsend was acting wholly as the representative of the Townsend Corporation and within the scope of his authority so to act. Rather than lose the opportunity to acquire the Malaren stock, Townsend acceded to the demands of Hirsch, and the following agreement was signed by those two men:

"Oslo, Aug. 24, 1929.

"Gunnar Hirsch, Esq., Forsakringsaktiebolaget Malaren, Stockholm.

"Dear Sir: I hereby beg to confirm the agreement concluded by Mr. Alf Whist and by telegrams exchanged between my firm in New York and Aktiebolaget Svenska Handelsbanken in Stockholm to the effect that I have purchased from you not less than 51% or not more than 75% of the Forsakringsaktiebolaget Malaren's 3,000 shares at a rate of 120%, i. e. 600:-Swedish kronor a share plus 6% interest thereon from 1st of August 1929 until payment is made. As purchaser I shall be entitled to select in my place another person or a certain company. This will in all probability be the Domestic & Foreign Insurancestocks Corporation of New York. Payment of the number of shares that has now been deposited by you in Aktiebolaget Svenska Handelsbanken in Stockholm comprising 71.96%, corresponding to 2.159 shares i. e. Swedish kronor 1,295.000:-plus 6% interest as above, shall be made at Aktiebolaget Svenska Handelsbanken in Stockholm, Drottninggatan 5, not later than November 15, 1929. I am under obligation until November 15, 1929 to take over further 3.04% of the Forsakringsaktiebolaget Malaren's shares corresponding to 91 shares i. e. Swedish kronor 54.6000:-plus 6% interest as above, which amount is to be paid Aktiebolaget Svenska Handelsbanken in Stockholm

either cash or by deposit under escrow agreement for successive delivery. Responsibility for stamp-duty shall be taken over by you.

"According to a previous agreement payment should have been made by me prior to 25th August 1929. This letter thus involves an amendment in regard to the date of payment in the earlier agreement, which later date is accepted by you.

"Yours truly,

"W. W. Townsend.

"The contents of the above are herewith accepted in every respect by the undersigned Mr. Gunnar Hirsch.

"Gunnar Hirsch."

The telegrams referred to in fact went only to an option on the stock, and no previous agreement, other than that, had been made. Townsend did not want to commit himself to the purchase of the stock with the personal obligation of some $375,000 it entailed, and only did so after Whist had promised him that a French company Whist controlled would assume half of Townsend's obligation. Some time afterwards Townsend and Whist exchanged letters setting forth that each was acting in behalf of his company (Townsend for the bankrupt corporation and Whist for the French Company) and that each such company would have a one-half interest in the Malaren stock purchase contract. Townsend reported the transaction to the bankrupt corporation as a contract of that corporation to purchase the stock, and it was thereafter considered by him and by the other officers of the bankrupt as a contract made by him in the bankrupt's behalf. It was understood by all concerned that the Townsend Corporation was to have and pay for the Malaren stock and that the contract with Hirsch was one of purchase, rather than an option merely, and made in the name of Townsend himself as the purchaser because it was necessary to have it that way in order to get the stock for the Townsend Corporation.

After the financial situation changed in October, 1929, the Townsend Corporation could not get the money to make the payment due under the contract on November 15th. Hirsch was so advised, and threatened to sue both Townsend and the bankrupt. Whist undertook to make a settlement with Hirsch, and succeeded in arranging matters so that Hirsch agreed for a payment of $10,000 to release Townsend, Whist, and the bankrupt from all liability under the contract to purchase the Malaren shares and to give Whist an option on those shares. Whist paid Hirsch $5,000, and the other $5,000 was paid

with money of the bankrupt. This money was paid on December 12, 1929, by one Van Inderstine, acting for the bankrupt, to the National City Bank, and transmitted by it to Whist's attorney in Oslo, who paid it to Hirsch. It is the payment now in suit. We take as proved that the Townsend Corporation was insolvent when this payment was made, and on December 27, 1929, it filed a voluntary petition in bankruptcy.

■ Since Hirsch knew from the beginning that the stock was being purchased by Townsend for the Townsend Corporation which was to have it on the contract terms, it may well be that the known intent of Townsend to act only as the agent of the bankrupt was from the start sufficient to defeat any attempt by Hirsch to hold Townsend as a principal. See Metcalf v. Williams, 101 U. S. 93, 26 L. Ed. 665; Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050. But that phase of the matter need not be pressed. At least, after the Townsend Corporation knew what contract he had made with Hirsch and knew that Townsend made it in his name only to enable the Townsend Corporation to get the shares and acquiesced in the agreement he had made, it adopted the contract and ratified his acts as its agent. From that time the fact that he exceeded any express authority he originally had to act for the bankrupt became immaterial, and the contract was that of the bankrupt. Clews v. Jamieson, 182 U. S. 461, 21 S. Ct. 845, 45 L. Ed. 1183; Bennett v. Hunter, 9 Wall. 326, 19 L. Ed. 672. After Townsend had personally signed this agreement, acting as he supposed for the best interest of the bankrupt, and the bankrupt knew all the facts and circumstances, including the fact that Townsend made the agreement in its behalf and for its benefit, it was certainly bound to disaffirm within a reasonable time or its ratification is to be presumed. Law v. Cross, 1 Black, 533, 17 L. Ed. 185; Indianapolis Rolling Mill Co. v. St. Louis, Ft. S. & W. R. Co., 120 U. S. 256, 7 S. Ct. 542, 30 L. Ed. 639. When this payment of $5,000 was made to Hirsch with the bankrupt's money, it was made to discharge an obligation which was that of the bankrupt. So there was no fraudulent transfer of the funds of the bankrupt in making the payment, for the money was paid in settlement of its own obligation.

■■ Yet it may have been a preference as to Townsend upon the theory that Hirsch could have recovered from Townsend whose sole remedy would have been a recovery over from the bankrupt. While we have already alluded to the difficulty Hirsch might have

encountered in a suit against Townsend, we will assume for the moment that he could have recovered and left Townsend only a right of action against the bankrupt. Upon this assumption Townsend was benefited by the transfer of the bankrupt's funds in settlement of the claim of Hirsch. In re Schleicher Printing Corporation (C. C. A.) 62 F.(2d) 503. Yet even though Townsend knew the bankrupt was then insolvent, there is no proof that he had reasonable cause to believe that the payment would effect a preference. To be that, the bankrupt must have paid in settlement more than other creditors in the same class would receive. Swarts v. Fourth National Bank (C. C. A.) 117 F. 1. Not often does this question arise when a payment is made. But this obligation would have been to pay the damages resulting from the breach of the contract to pay $375,000 for the stock. The bankrupt's estate might well have been liable for such a sum in damages that the dividends upon the claim would have exceeded $5,000. We cannot assume that in the settlement made Hirsch was paid more than would have been required from the estate had the settlement not been made. These uncertain factors now, were so uncertain when the payment was made, that the vital fact that Townsend had reasonable cause to believe that a preference would be effected has not been proved. Indeed, it is as reasonable to believe that the payment was a benefit to the general creditors as to believe the contrary.

Whist is not shown to have benefited at all from the payment except in so far as it may be thought that it enabled him to extinguish the liability of his company for the $5,000 he paid and to secure an option on the stock. However, in any event, he knew little or nothing of the bankrupt's affairs, and had no reasonable cause to believe that a preference would be effected.

Decree affirmed.