## JENTZER v. VISCOSE CO. et al.

District Court, S. D. New York.
Nov. 17, 1934.

Maxwell S. Mattuck, of New York City, for plaintiff.

Spencer, Ordway & Wierum, of New York City (John A. McManus, Samuel H. Ordway, Jr., and Roderick B. Travis, all of New York City, of counsel), for defendants.

PATTERSON, District Judge.

The suit is to set aside a transfer of property by the bankrupt to the defendant Le Roy, the latter acting in behalf of the defendant Viscose Company, on the ground that the transfer was a voidable preference. While the form of the suit is the familiar one, the facts that gave rise to it are unusual. For convenience the Viscose Company will be referred to as the defendant.

An involuntary petition in bankruptcy was filed against Yarns Corporation of America on September 30, 1931. The transfer complained of took place on June 3, 1931, which is within the time limitation of four months.

The bankrupt was in the yarns business. Its affairs were managed by one Grisman. It had plants in Brooklyn, Allentown, Pa., and Spartanburg, S. C.

Some years before it had issued bonds secured by a mortgage on the Spartanburg property and on certain other assets; $244,000 of these bonds were outstanding in 1931. The bankrupt had also become indebted to the defendant in the amount of $500,000 for merchandise purchased. In May, 1930, this liability had been scaled down to $319,000 by a written agreement, the validity of which is assumed by both parties and will not now be re-examined. The defendant refused thereafter to extend any further credit, however, and the bankrupt was hard put to buy its supply of yarn. Until the transfer in question it made no payments in reduction of the $319,000 debt. By the beginning of 1931, the Brooklyn and Spartanburg plants had closed down altogether and the Allentown plant was limping along on a small volume of business. The company was plainly doomed unless there was a radical change for the better.

Early in 1931 one Law, of Spartanburg, whose firm had bought and distributed the bond issue and who had been made a director of the bankrupt to represent the bondholders, came to New York and had a series of conferences with Caulfield, credit manager of the defendant. The bankrupt's inability to pay the $319,000 debt was discussed. Law put it to Caulfield that if the amount of the defendant's claim were reduced the claim might be paid and the bankrupt thereby given a new lease of life. These conferences eventuated in a promise by the defendant, evidenced by letter of February 20, 1931, to accept $75,000 in full settlement of the $319,000 debt, provided payment should be made by May 20, 1931, the $75,000 to be raised by the bankrupt either through new funds or through liquidation of assets under Law's direction. Law then turned his attention toward raising new money, but the bank to which he took the matter found conditions in the company thoroughly unsatisfactory and declined to proceed. On May 8th Law called on Caulfield to report that the $75,000 could not be raised. He said that on examination the bankrupt's accounts receivable had proved to be of low grade; that the business could not be operated successfully. His proposal was that a creditors' committee be formed to wind up the company. Caulfield opposed the suggestion, saying that he favored bankruptcy and might submit a plan later. This marked the end of Law's efforts.

A week or so later Grisman, the bankrupt's president, took up with Caulfield the possibility of clearing off the defendant's claim. He proposed that the bankrupt should assign certain slow assets to a trustee and that on realization of $75,000 for the defendant the $319,000 claim should be deemed discharged. Caulfield accepted the proposal, subject to approval of his superiors. Accordingly an instrument dated June 3, 1931, was executed. It is the transfer made pursuant to this instrument that is assailed as a voidable preference. The instrument provided that the bankrupt would pay $75,000 to the defendant, and that the defendant would accept that sum in full settlement of all claims. As part of the same transaction the bankrupt transferred to Le Roy, acting as trustee, merchandise, accounts receivable, and claims as collateral security for its promise to pay the $75,000. Le Roy was to reduce the assets to cash, from the proceeds to pay $75,000 to the defendant, and to return any remaining assets to the bankrupt. In the event that less than $75,000 should be realized, the defendant was to take whatever was realized as payment on account of its $319,000 claim. The assets so assigned to Le Roy in trust for the defendant had a large book value, but on actual realization by Le Roy some months later they brought in only $15,000, and yielded to the defendant a net of only $13,000. Their fair value on June 3, 1931, was not substantially in excess of $15,000, the sum that Le Roy was able to squeeze out of them. In effect, therefore, the transfer was of assets worth $15,000 as a payment in reduction of the defendant's claim for $319,000.

This transfer left the bankrupt with the real estate and machinery covered by the mortgage to secure the $244,000 bonds, and with about $24,000 in other assets. The greater part of these other assets was in a wholly owned subsidiary. The bankrupt's business, which had been moribund already for some months, ceased completely. There was a certain amount of activity on the part of the subsidiary, but even here all signs of life ceased shortly before bankruptcy. Prior to bankruptcy the unencumbered assets had been consumed through salaries and other expenses. The trustee in bankruptcy could find assets of only $100.

The bondholders brought suit for foreclosure of the mortgaged property in September, 1931. They eventually realized

out of the security some $62,000, a figure which in my opinion also reflects the fair value of the property in June, 1931. This left an unsecured deficit of $182,000, upon which the bankrupt was generally liable and for which the bondholders filed claims in the bankruptcy proceeding.

The bankrupt was hopelessly insolvent when it made the transfer under attack. The defendant makes no more than a faint suggestion to the contrary. The assets, including those mortgaged, were $101,000, against liabilities of $574,000. The liabilities were made up of $319,000 owed to the defendant, $244,000 owed to the bondholders, and $11,000 owed to various others. If the mortgaged properties at $62,000 and an equivalent amount of bonds are omitted, the bankrupt had before the transfer assets of $39,000 and unsecured liabilities of $512,000.

The defendant's position is that the transaction gave it no greater percentage of its claim than was available to other creditors of the same class, and also that it had no reasonable cause to believe that a preference would be effected. It is pointed out that the transfer covered property worth only $15,000, that this was a payment of only 4.7 per cent. on the defendant's claim of $319,000, and that after the transfer the defendant still had unencumbered assets of $24,000, an amount which, if then distributed pro rata among creditors other than the defendant, would have given them a payment of 12 per cent. The fact that the other creditors actually received nothing and will get nothing out of the bankrupt estate if the transfer is sustained is said to be immaterial in law.

1. On the point of "greater percentage," the first consideration is the Bankruptcy Act itself. Section 60a, as amended by Act May 27, 1926, § 14, 11 U.S.C.A. § 96 (a), defines a "preference" as the suffering of a judgment or the making of a transfer by the bankrupt while insolvent and within four months of bankruptcy, where "the effect of the enforcement * * * will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

Section 60b, Bankr.Act, 11 U.S.C.A. § 96 (b), states the conditions under which a preference shall be voidable. Not all preferences are voidable by the trustee. Section 60b provides that a judgment or transfer shall be voidable where made within the four months' period, "if, at the time of the transfer, * * * the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it * * * shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference."

The Supreme Court of Massachusetts has held that the preferential aspect of a transfer attacked as voidable, in so far as its effect in giving a greater percentage is concerned, should be judged solely by the situation existing later on at the time of bankruptcy. This construction is the result of placing emphasis on section 60a, with its words of futurity, and of passing by the requirement in section 60b that the transfer "then" (obviously referring back to the clause "at the time of the transfer") operate as a preference. Rubenstein v. Lottow, 223 Mass. 227, 111 N.E. 973. The District Court of Massachusetts has taken the same view, making the test of "greater percentage" turn, not on the ability of the bankrupt at the time of the transfer to pay a like or greater percentage to other creditors, but on whether the others actually will receive as great a percentage out of the bankrupt estate. Eyges v. Boylston Nat. Bank, 294 F. 286.

In other courts the view has been taken that the preferential effect of a transfer must be judged according to its operation at the time the transfer was made and not according to later results. Prominence is given to the clause in section 60b that the transfer must "then," that is, at the time of the transfer, operate as a preference. From this premise of statutory construction, the conclusion seems to have been drawn that if a transfer leaves the bankrupt with enough to pay a like or greater percentage to other creditors of the same class, there cannot be a preference. The fact that the remaining assets never reach other creditors is disregarded. A line of cases in the Eighth Circuit supports this view. W. S. Peck & Co. v. Whitmer (C.C.A.) 231 F. 893; Mansfield Lumber Co. v. Sternberg (C.C.A.) 38 F.(2d) 614; Haas v. Sachs (C.C.A.) 68 F.(2d) 623. The state courts in Vermont and Kansas are in accord. Slayton v. Drown, 93 Vt. 290, 107 A. 307; Brittain Dry-goods Co. v. Bertenshaw, 68 Kan. 734, 75 P. 1027. See, also, Jackson v. Oliver C. Steele Mfg. Co. (Tex.Civ.App.) 37 S.W.(2d) 762; Remington on Bankruptcy, § 1812. In the Haas

Case, supra, it was said: "This court has held that whether the effect of the transfer will be to enable the creditor receiving it to obtain a greater percentage of his claim than other creditors of the same class, is to be determined as of the date of the actual transfer, and not as of some future date when later events have altered the assets or liabilities, or when court liquidation may have caused shrinkage of values and other losses." 68 F.(2d) 623, at page 625.

■ As matter of statutory construction, it is difficult to see how fair effect can be given to the explicit provisions of section 60b by the adoption of a standard less favorable to the creditor receiving the transfer. If there is a conflict between section 60a and section 60b, the latter must be accorded at least equal weight. It is the only provision of the act that deals directly with voidable preferences. The conclusion must be that under the Bankruptcy Act the preferential effect of a transfer, so far as its voidability is concerned is to be determined not only by its ultimate result (section 60a), but also by its immediate result as of the time of the transfer (section 60b). If it is not more advantageous to the receiving creditor at the time of the transfer than to others of his class, it is not a voidable preference.

■ But it does not follow from this that a transfer to a creditor of no more than his proportionate share of the debtor's assets cannot be a voidable preference. Where the transfer is merely a payment on account of the claim, the receiving creditor still has the balance of his claim, and as to this unpaid balance he stands on a parity with other creditors who got nothing at the time. It is not accurate therefore to say that he leaves enough for other creditors to give them equal or greater percentages. What he leaves is for himself on the unpaid balance of his own claim, as well as for other creditors. Here the bankrupt owed the defendant $319,000 and other creditors $193,000. It transferred to the defendant property worth $15,000 as a payment on account, reducing the amount of the defendant's claim to $304,000. It still had assets worth $24,000. The defendant did not leave these assets for distribution among other creditors. As to those remaining assets the defendant had rights, to the extent of its unpaid balance of $304,000, as perfect as the rights of other creditors. It could take further

payments, pursue creditors' remedies, or share in involuntary liquidation. All that happened was that as to $15,000 of its claim the defendant was paid in full, and it still had the balance of its claim for future collection out of the bankrupt's assets. The effect, immediate as well as ultimate, was that the defendant obtained a greater percentage on its claim than other creditors of the same class; it obtained, in other words, a preferential payment.

There is support for this view. In Commerce-Guardian Trust & Savings Bank v. Devlin, 6 F.(2d) 518 (C.C.A.6), the court declared a payment similar to that in the present case to be a voidable preference. Judge Knappen said, 6 F.(2d) 518, at page 519: "We see no merit in the suggestion that the bank got no greater percentage on its own claim (about 48 per cent.) than creditors generally would have had, if we accept the estimate of 50 per cent. made by the bankrupt's bookkeeper. The bank actually received 100 per cent. on $6,300 of its claim, and, if the preferences were upheld, would be entitled to receive upon the balance of its claim the same percentage as other creditors of the same class."

A like situation was presented in two of the cases in the Eighth Circuit already cited, W. S. Peck & Co. v. Whitmer and Haas v. Sachs, and also in the Vermont and Kansas cases adverted to; but in these instances the transactions were treated as nonpreferential. In those cases sight seems to have been lost of the fact that the creditor who received the payment on account of his claim retained the balance of his claim for further collection on a parity with other creditors. The case was considered as if the creditor had dedicated the remaining assets to the other creditors, which was not the fact. The receiving creditor got more than other creditors, and it was obvious all along that he would get more if the transfer should be sustained.

Mansfield Lumber Co. v. Sternberg, supra, also in the Eighth Circuit, is not subject to this criticism. There the defendant, with a claim of $21,000, took a transfer of property, not as partial payment, but in full satisfaction of the claim. The property was worth only $1,600. The defendant thus received only 7 per cent. of its claim, and its claim was extinguished. The bankrupt retained property sufficient to pay a dividend of 11 per cent. to other creditors. The trustee's attack on the transaction as

a preference was unsuccessful. It seems manifest that the transaction did not enable the defendant to get a larger proportion of the bankrupt's property than was left for other creditors. The situation was not like a payment merely on account of a claim. Cases somewhat analogous are Irving Trust Co. v. Townsend, 65 F.(2d) 406, 408 (C.C.A.2), and Hart v. Emmerson-Brentingham Co., 203 F. 60 (D.C.Mo.).

I am therefore convinced that where a creditor takes a transfer in partial payment of his claim from the bankrupt while insolvent and within four months of bankruptcy, proportionate payments not being made to all other creditors of the same class, the transaction "then operates as a preference" within the meaning of section 60b, and it is not saved by the fact that the bankrupt at the time retained assets sufficient, if then distributed among his other creditors, to yield as great or a greater percentage to them.

■■ 2. Did the defendant have reasonable cause to believe, at the time of the transfer, that the transfer would effect a preference in its favor? Plainly it was aware of the insolvency of the Yarns Corporation. A creditor of a solvent debtor does not agree to take $75,000 in full satisfaction of an undisputed claim for over four times that amount. In a case where the transfer is only a partial payment, as in this case, it is necessary to show also that the defendant had reasonable cause to believe that it was obtaining a greater percentage of its claim than other creditors. See Irving Trust Co. v. Townsend, supra. The evidence discloses that the defendant had such reasonable cause. It knew that it was getting part of its own claim paid in full and that the other creditors were then getting nothing. This is not a case where the defendant had reason to believe that the bankrupt was planning to make proportionate payments to all creditors. In such cases reasonable cause to believe that a preference would be effected is lacking. Smith v. Hewlett Robin Co., 179 F. 271 (C.C.A.2); Templeton v. Wollens, 200 F. 257 (C.C.A.2); In re Varley & Bauman Clothing Co., 191 F. 459 (D.C.Ala.).

It is true that the defendant was assured by Grisman at the time that the bankrupt had "no creditors of any account other than yourself," and that "the rights of others are not affected." But the defendant already had notice to the contrary. It had known for months that the bankrupt had a large issue of bonds outstanding, and from the correspondence and conferences with Law and Blackford it knew that the firm which had distributed and sponsored the bonds was worried as to the adequacy of the security. Inquiry would have disclosed that the security behind the bonds was altogether inadequate, and the defendant was acquainted with enough facts to put it on inquiry. Wright v. William Skinner Mfg. Co., 162 F. 315 (C.C.A.2); Pender v. Chatham Phenix Nat. Bank & Trust Co., 58 F.(2d) 968 (C. C.A.2).

■■ 3. The defendant and the bondholders were creditors "of the same class," within the meaning of section 60a. The classes referred to in that section are the four classes of creditors whose priorities in distribution are specified in section 64, Bankr.Act, as amended by Act May 27, 1926, § 15, 11 U.S.C.A. § 104—creditors with claims for taxes, creditors with claims for wages, creditors with statutory priorities, and all other creditors. The fact that some creditors are partially secured does not put them in a different class from wholly unsecured creditors. Swarts v. Fourth Nat. Bank of St. Louis, 117 F. 1 (C.C.A.8); In re Star Spring Bed Co., 257 F. 176 (D.C.N.J.), affirmed in (C.C. A.) 265 F. 133.

■ The plaintiff is entitled to a decree adjudging the transfer a voidable preference. Against the defendant Viscose Company there will be a decree for the payment to the plaintiff of all moneys received or applied to the use of that defendant. Against the defendant Le Roy the plaintiff may have an accounting and a direction for transfer of any property not yet turned over by him to the Viscose Company. Le Roy was acting as agent or trustee for the Viscose Company and is under no personal liability for money or property already turned over by him to the party for whom he was acting. Carson v. Federal Reserve Bank, 254 N.Y. 218, 172 N.E. 475, 70 A.L.R. 435. The cause of action charging a transfer in fraud of creditors will be dismissed. The decree will be settled on five days' notice.